Heitman Trust Company, Trustee, v. Edward W. Parlee, Jr., et al.
Ruth Riff, Appellant, v. Union Park Hotel Company, Appellee.

Gen. No. 41,727.

Heard in the second division of this court for the first district at the June term, 1941. Opinion filed March 24, 1942. Rehearing denied April 11, 1942.

HERSHENSON & HERSHENSON and JAMES B. McKEON, all of Chicago, for appellant.

MAURICE BURR, of Chicago, for appellee; CLYDE C. FISHER, of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

Ruth Riff, the purchaser of hotel property at a master's sale held pursuant to a foreclosure decree which directed the furniture to be sold along with the real estate, appeals from an order of the superior court denying her petition to restrain the Union Park Hotel Company, a corporation, assignee of the original mortgagor who operated the hotel for three years after it was constructed and opened for business, from removing the furniture from the foreclosed premises, and for a writ of assistance as against said property.

The essential facts disclose that on February 14, 1929 Edward W. Parlee, Jr., executed a trust deed to secure a bond issue of $285,000, to be used for the purpose of constructing an apartment hotel. The trust deed conveyed real estate upon which the hotel was to be erected, "together with . . . all window screens, window shades, door screens, curtain fixtures, furnaces, ranges, gas and electric light fixtures, . . . in-a-door or roll-away beds; furniture, carpets, linens, drapes, curtains, tables, chairs, silverware, knives and forks, spoons, glass, glassware, stoves, and all household furniture, fixtures, equipment, utensils, accessories and everything used in and about the hotel or

kitchenette apartment building . . . ." Another provision of the trust deed stipulated that "The party of the first part [the mortgagor] and for his heirs, administrators, executors or assigns, does hereby agree immediately upon the erection of the building, to completely furnish the building erected or to be erected upon the premises hereinabove described, and to keep the same so completely furnished until this Trust Deed shall be duly released, so that said building during all such time may be operated furnished, or as a furnished hotel or apartment hotel."

An apartment hotel was erected on the mortgaged premises and opened for business on June 20, 1929 by Union Park Hotel Building Corporation which had been organized for operating purposes. Arthur A. Klein acted as agent for the corporation in furnishing the hotel, operated the enterprise from its inception until foreclosure and was the owner of more than 50 per cent of the corporate stock. After the building was constructed he requested and received from Heitman Trust Company, the trustee, a statement of account showing disbursement of the proceeds of the sale of $235,000 unsubordinated bonds, which was still in his possession when this proceeding was heard.

June 23, 1932, while Klein was still operating the enterprise for Union Park Hotel Building Corporation as its agent and manager, and part owner, a new corporation was formed bearing the similar name of Union Park Hotel Company. At the same time the original corporation changed its name to 1519 Warren Boulevard Building Corporation. Several days later Union Park Hotel Company entered into a contract with the original building corporation for the purchase of the furniture and furnishings contained in the building, and the old building corporation leased the premises to the new company. At the time of this transaction some $18,000 of the matured bonds had been paid and canceled, while others were in imminent default.

On January 7, 1936 Heitman Trust Company, trustee, filed a complaint to foreclose the trust deed because of default in the payment of principal, interest and taxes. Union Park Hotel Building Corporation, being the owner of the equity of redemption, was made a party defendant to the foreclosure proceedings, and an appearance was filed on its behalf, as well as for 1519 Warren Boulevard Building Corporation. A subsequent answer filed by both corporations neither admitted nor denied any of the allegations of the complaint but demanded strict proof thereof. Union Park Hotel Company and Klein were also made parties defendant to the foreclosure proceeding, were personally served, and defaulted for failure to appear. The cause was thereafter referred generally to a master, who recommended the entry of a decree of foreclosure and sale of the property in accordance with his findings, and specifically designated the furniture and chattels described in the trust deed to be sold along with the real estate and building as security for the indebtedness. No objections were filed by any of the parties with respect to the property found by the master to have been conveyed as security for the indebtedness.

June 30, 1937 a decree of foreclosure and sale was entered in accordance with the master's report and recommendations, which directed the master to sell the real estate, "together with . . . all window screens, window shades, door screens, curtain fixtures, furnaces, ranges, gas and electric light fixtures, . . . in-a-door or rollaway beds; furniture, carpets, linens, drapes, curtains, tables, chairs, silverware, knives and forks, spoons, glass, glassware, stoves, and all household furniture, fixtures, equipments, utensils, accessories and everything used in and about the hotel or kitchenette apartment building . . . ."

The master filed his report of sale November 2, 1939, stating that he had conducted the sale pursuant to the decree of foreclosure, that Ruth Riff offered and paid for the whole of said property the sum of $172,500,

and that being the highest and best bid offered, he had accordingly struck off and sold to her for that sum the real estate, together with all buildings, improvements and appurtenances thereunto attached, including the furniture, fixtures and chattels which he specifically described in the identical language of the decree, as hereinbefore set forth. On the same day a decree was entered approving in all respects the sale and report of the master. Thereafter certificate of sale was issued to Ruth Riff conveying the real estate and all property hereinbefore described. She filed her petition setting forth the salient facts pertaining to the foreclosure proceeding, alleging that Union Park Hotel Company and Klein had threatened to remove the furniture and chattels from the hotel premises; had likewise threatened that when the hotel property was turned over to her it would be vacant and without any of the furniture contained therein; and that unless the hotel company and Klein were restrained from removing any of the chattels from the premises, she would suffer irreparable loss and damage. After obtaining the master's deed on December 9, 1940, she filed a second petition seeking a writ of assistance against the Union Park Hotel Company. The respondent's answer to the first petition denied the allegations of the petition and averred that the furniture used in the hotel was not subject to the lien of the trust deed foreclosed. The chancellor denied her application for an injunction and dismissed the petition, and at the same time issued a writ of assistance only as to the real estate but denied her a writ of assistance as to the balance of the property described in the petition.

In support of the chancellor's order it is urged by respondent, Union Park Hotel Company, that the court did not have jurisdiction of the personal property described in the trust deed because the real estate mortgage was not executed, acknowledged and recorded in compliance with the statute pertaining to

chattel mortgages and therefore cannot be held to include chattels described therein; and that petitioner, being chargeable with notice that the court had no jurisdiction to enter the decree, cannot assert the rights usually accorded to a purchaser for value at a judicial sale. (Ill. Rev. Stat. 1941, ch. 95, pars. 1, 2 and 4 [Jones Ill. Stats. Ann. 83.01, 83.03 and 83.04].) Paragraph 1 of the statute provides in substance that no mortgage of personal property shall be valid as against the rights and interests of any third person unless possession thereof shall be delivered to and remain with the grantee or the instrument shall provide for the possession of the property to remain with the grantor and be acknowledged and recorded or filed in accordance with the provisions of the act. Paragraph 2 provides for acknowledgment of the chattel mortgage, indicating the form of acknowledgment to be used. Paragraph 4 provides that no mortgage of personal property shall be valid as against the creditors of the mortgagor unless filed or recorded in the office of the recorder of deeds within ten days of its execution, and that any such mortgage not deposited for filing or recording within the specified time shall be fraudulent and void as to creditors.

The defense to the petition for an injunction and writ of assistance is based primarily on the theory that respondent is a "third person" within the contemplation of the statute, and that the trust deed foreclosed which pledged the furniture and chattels within the hotel along with the real estate and building constructed on the property, not having been filed or recorded as provided by statute, was invalid as to respondent and therefore divested the court of jurisdiction to sell the chattels at the foreclosure sale. In a contest between a mortgagee and a third person or creditor who seeks to reach the mortgaged chattels, where it is made to appear on trial that a mortgage is *bona fide,* it devolves on the person claiming title

to the chattels to establish his superior equity by show-
ing that he belongs to the class of creditors or persons
who are entitled to challenge the validity of the mort-
gage as against them, because not duly or seasonably
recorded. 11 C. J. 514, citing *St. Paul Title Insurance
& Trust Co. v. Berkey,* 52 Minn. 497, 55 N. W. 60. It
is evident from the record that respondent failed to
sustain this burden. It cannot be denied that from the
very beginning Klein was the guiding genius of the
hotel. He managed and controlled the original build-
ing corporation and operated the hotel under the orig-
inal plan as well as under the new corporation. No
other individual appears in the picture. He opened the
hotel upon its completion in 1929 and testified that he
was present there substantially every day thereafter.
He requested and received from the trustee a state-
ment of account showing disbursements from the pro-
ceeds of the sale of bonds which was still in his
possession at the time of the trial, indicating his per-
sonal interest in the enterprise. It must be assumed,
when the new corporation was formed in 1932 and
simultaneously therewith the original company relin-
quished its almost identical name to the new cor-
poration and immediately thereafter entered into a
contract for the sale of the furniture of the old company
to respondent, that Klein was instrumental in effecting
these changes because he was heavily interested as a
stockholder and was in charge of the operation of the
hotel property as manager for respondent. The record
does not suggest that any other individual was at all
interested in the proceeding. Under the circumstances
Klein's knowledge of the transaction is necessarily im-
puted to the new corporation. It has been held in
numerous jurisdictions that the knowledge of an agent
or an attorney regarding an unrecorded or defective
chattel mortgage is the knowledge of his employer.
11 C. J. 523, sec. 200, and cases cited therein. It is fair

to assume that in June 1932, when the corporate
changes were effected and the furniture purchased by
respondent, Klein knew that the original building cor-
poration from which these chattels were obtained was
about to default in the payment of certain of its bonds
and that foreclosure of the property would probably
follow; and that since all of the furniture in the hotel
was subject to the lien of the trust deed, the entire
property, including the chattels, would be sold to sat-
isfy the mortgage debt. Petitioner's counsel argue
with considerable force that Klein thus sought to cir-
cumvent the bondholders and favor himself and
respondent, in which he was heavily interested, by im-
provising the plan employed for acquiring the furni-
ture and furnishings in the hotel. The knowledge of
all that he did, being imputed to the respondent cor-
poration for which he acted and in which he was inter-
ested, estops it from claiming that it was a third
person in the transaction within the meaning of the
statute. *Fuller v. Paige,* 26 Ill. 358.

In some States the requirement that chattel mort-
gages be recorded is made absolute by statute, but in
Illinois the necessity for recordation is intended pri-
marily as a safeguard to protect the interests of third
persons or creditors so as to prevent fraud and de-
ception by precluding a mortgagor of personal prop-
erty from holding himself out to the world as an un-
qualified owner. Those who claim as third persons or
creditors as against a mortgagee must exercise the
utmost good faith, and a transfer which will be pro-
tected as against a chattel mortgage must be *bona fide*
(*Niepschield v. Reuss,* 92 Ill. App. 636), and for a val-
uable consideration (11 C. J. 518, sec. 194, and cases
cited therein). In the *Niepschield* case it was held that
good faith and the absence of fraudulent intent must
characterize all contracts, and where the facts show a
contrivance and design by a party, knowing of the

existence of a chattel mortgage, such party cannot receive the aid of the courts in furtherance of the design.

Respondent does not seriously question the rule of law that an unrecorded chattel mortgage is valid as between the parties; its defense to the petition was predicated upon the contention that it was a third person within the contemplation of the statute. It is not uncommon in modern business practice to pledge the furniture, fixtures and chattels within a hotel as part of the security for the mortgage indebtedness assumed by the mortgagor in making a loan for the construction of a hotel enterprise. In *Haver v. North American Hotel Co.,* 111 Neb. 13, 195 N. W. 483, a foreclosure proceeding was brought under a trust deed which pledged the furniture and fixtures along with the real estate in language strikingly similar to the instrument here under consideration. A slightly different question arose in that proceeding. It was there contended that the language, "together with any and all buildings, improvements and appurtenances now standing, or at any time hereafter constructed or placed upon said land, or any part thereof, including all . . . furniture and furnishings of every kind . . . ," must be limited to such articles as come within the meaning and classification indicated by the words "buildings, improvements and appurtenances." The court held otherwise, however, and said that a reading of the whole clause manifested the intention of the parties that the lien should not only attach to the building and appurtenances but to all of the designated articles that might be placed in the building, either then or thereafter erected on the premises. In *Irving Trust Co. v. Spruce Apartments, Inc.,* 44 F. (2d) 218, it was held that a pledge of furniture in a real estate mortgage was enforceable as between the mortgagor and mortgagees, citing *Klaus v. Majestic Apartment House Co.,* 250 Pa. 194, 95 Atl. 451. In *Pennsylvania*

*Chocolate Co. v. Hershey Bros.*, 316 Pa. 292, 175 Atl. 694, the court under similar circumstances said that if when the mortgage was given the parties contemplated it should cover an operating plant, if the machinery and appliances were necessary to the functioning of a complete plant, they are bound by the lien of the mortgage. In the case at bar the property in question was intended for a one-use purpose, namely, an apartment hotel, and without the furniture, fixtures and furnishings it could not be adapted for that purpose. Certainly as between the original parties it was expressly stated and contemplated that the furniture should be subject to the lien of the mortgage, and validity should be given to this provision of the trust deed. What happened thereafter has already been discussed. It is fair to conclude that the plan employed by respondent, through its agent manager and part owner, was designed to deprive the bondholders of part of the security of the lien for which they had specifically contracted.

Moreover, the contention that the decree of foreclosure is "absolutely void and unenforceable and the Court was without jurisdiction to enter the same" is untenable for another reason. Respondent and Klein were both made parties to the foreclosure proceeding and had an opportunity, if they had so desired, to challenge the power of the court to order the sale of the chattels along with the real estate under foreclosure, and if the court had determined this issue adversely to them, they could have appealed from the decree. Instead, they both defaulted and took no part in the proceeding. The court undoubtedly had jurisdiction of the subject matter and of the parties. It is not contended that the foreclosure of the real estate was in any wise irregular or improper. The most that can be claimed by respondent is that the court erred in ordering the chattels to be sold; but that provision in the decree would not render it "absolutely void and unen-

forceable.'' We recently had occasion to pass upon a similar question in *Sunbeam Heating Co., Inc. v. Chambers,* 312 Ill. App. 382 (Abst.), wherein the assignee of the purchaser, at a sale held pursuant to the foreclosure of a mechanic's lien, contended that one who buys at a master's sale, in good faith, relying upon the decree, will be unaffected, notwithstanding the decree may afterwards be reversed. After an examination of the authorities we concluded that title of a *bona fide* purchaser is good, notwithstanding there may may have been errors or irregularities in the proceeding leading up to the decree which rendered it irregular, and in consequence of which it might have been set aside or reversed. In that case the principal defendants claimed that they had not been served with summons and that the court was absolutely without jurisdiction to enter the decree. This question was resolved against them by the trial court on the pleadings and without a hearing. It is, of course, fundamental in our law that the court must have jurisdiction of the subject matter and of the parties before a valid judgment or decree can be entered against them, but a distinction must be drawn between cases where the jurisdiction of the subject matter or party does not exist, whereby the judgment is a nullity, and situations, as in the case at bar, where the court undoubtedly had jurisdiction of the subject matter and of the parties, but may have erroneously exceeded its jurisdiction. Under the latter circumstances, where no appeal is taken, a purchaser for value at a judicial sale would be protected against parties claiming that the decree was erroneously entered.

Along with the foregoing contention, respondent also argues that a purchaser at a judicial sale, in order to be protected against the equitable right of a third person, must prove that he was a purchaser for value and has paid the purchase price. Counsel say that, under the terms of the sale as provided in the decree,

the property was sold subject to the right of the purchaser to pay the amount of her bid or any part thereof by delivering to the master the unpaid bond or bonds secured by the trust deed and to receive credit therefor on the amount of her bid; and that since Ruth Riff did not testify in the proceeding and neither the master's report of sale nor the decree confirming it indicates how the bid price was paid, we are to assume that Ruth Riff was merely a "dummy" or agent for the bondholders' committee and therefore, being charged with notice of the proceeding, she cannot be accorded the rights of an innocent purchaser or the rights of a purchaser for value. We find in the record, however, a stipulation that Ruth Riff was not a party to the proceeding except as a purchaser at the master's sale; nor was the bondholders' committee a party to the proceeding. The record shows that the petitioner offered and paid the sum of $172,500 and that being the best and highest bid offered, the master sold her not only the real estate but other property described in the trust deed, the bonds, the complaint, master's report, decree, master's report of sale and the master's deed. Under the circumstances the presumption should rather be in favor of her contention that she is a purchaser for value.

For the reasons indicated, the order or decree of the superior court is, therefore, reversed and the cause remanded with directions to enter appropriate orders finding that petitioner acquired good title to the property purchased by her at the master's sale, for a writ of assistance, and for the other relief to which she is entitled.

*Order or decree reversed and remanded with directions.*

SCANLAN, P. J., and SULLIVAN, J., concur.