Alexander **TCHEREPNIN** et al.,
Plaintiffs,

v.

Robert **FRANZ** et al., Defendants.

No. 64–C–1285.

United States District Court,
N. D. Illinois, E. D.

Aug. 6, 1970.

Don H. Reuben and Steven L. Bashwiner, Chicago, Ill., for Leonard B. Ettelson and William J. Friedman, receivers and cross-plaintiffs.

Fred Weiszmann, Northbrook, Ill., for cross-defendants Peerless Closure Co. and Henry A. Finlay, Jr.

Teitelbaum, Wolfberg & Guild, Chicago, Ill., for cross-defendants Trustees of the Central States, Southeast and Southwest Areas Pension Fund and George Washington Savings & Loan Assn.

Henry McGurren, Chicago, Ill., for cross-defendant Braewood Builders Corp.

Theodore C. Weinberg, Chicago, Ill., for cross-defendants Mensik, Kramer, Barto and Kulikowski.

Richard F. McPartlin, Chicago, Ill., for cross-defendant Henry McGurren.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM, ORDER AND JUDGMENT

CAMPBELL, District Judge.

This action, brought by the court appointed receivers as an ancillary proceeding in this case, seeks a determination that certain properties are held in constructive trust for the benefit of the estate in receivership. The court's receivers ask that an order be entered compelling certain persons allegedly in title or who claim some interest in the properties to convey said properties to City Savings Association.

Extensive evidence relating to these properties was presented by the receivers and by certain other interested parties. Upon the completion of all evidence of all interested parties, briefs were submitted clearly delineating the position of all parties. Having considered all of said evidence and the extensive briefs filed thereafter, I now make the findings of fact, and conclusions of law as set forth in this memorandum.

This case is most complex and difficult and requires some explanation of the proceedings in the case in chief. This case was originally brought by a group of shareholder-depositors of City Savings Association. Their complaint was filed July 24, 1964. Jurisdiction was based on the Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq.). After appeals to our Seventh Circuit Court of Appeals and to the United States Supreme Court, the jurisdiction of this court was affirmed. Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564. Upon remand from the Supreme Court and on motion of the depositors and after an extensive hearing on said motion, I removed the state appointed liquidators then in custody of the assets of the Association and appointed receivers of this court. 277 F.Supp. 472. That action was reviewed and affirmed by our Court of Appeals. Tcherepnin v. Kirby, 7 Cir., 416 F.2d 594.

In an effort to expedite a determination in this cause and because the case was and is a most complex one, involving thousands of documents and numerous claims of depositors who have been pursuing a federal remedy for almost six years, I ordered that this litigation should proceed pursuant to the enlightened procedures outlined in the Judicial Conference's Manual for Complex and Multidistrict Litigation. I also instructed the court's receivers that all claims of the Association were to be litigated in this court as ancillary to the case in chief.

On April 4, 1969, the Receivers filed a Cross Complaint herein alleging massive fraud by cross-defendants C. Oran Mensik ("Mensik") and Robert M. Kramer ("Kramer") in concert with the other officers and directors of City Savings and various other persons and corporations; the Cross Complaint alleged that certain parcels of real estate in the Chicagoland area owned or controlled by Mensik and Kramer belonged in equity to City Savings because of these frauds and urged the imposition thereon of a constructive trust for the benefit of City Savings, its members and creditors.

On May 1, 1970, the Receivers served notice of a hearing instanter on the issue of title to these properties. On May 4, through May 8, and on May 21, 1970, hearings were held and were consolidated by agreement of the parties with prior proceedings concerning the Rule upon cross-defendant Henry McGurren ("McGurren") as Trustee to show cause why the property commonly described as Palatine Estates should not be conveyed forthwith to City Savings. Cross-defendants McGurren, Kramer, Finlay, Peerless Closure Company and Braewood Building Corporation appeared and testified in support of their positions; evidence has also been offered by the Receivers to support City Savings' claim to these properties. Peerless Closure Company and Henry McGurren as Trustee have filed Briefs in support of their positions and in response to a Brief filed by the Receivers.

Cross-defendant Alexander J. Pikiel, Mensik's attorney, who is now deceased, testified extensively by deposition taken prior to his death by the attorneys for the Receivers.

Mensik is currently incarcerated in the Federal Penitentiary. However, on October 1, 1969, Mensik testified extensively by deposition taken by the attorneys for the Receivers in the DuPage County Jail in Wheaton, Illinois.

Robert M. Kramer appeared and testified before this court during the hearings on the issue of title to the properties under petition. In addition, Kramer testified at depositions taken by the attorneys for the Receivers on October 30, 1969; November 14, 1969; Novem-

ber 18, 1969; February 20, 1970; February 24, 1970; and February 25, 1970. Kramer's deposition exceeds 500 pages of testimony and involved the identification by him of several hundred documents, including numerous checks and records of City Savings Association, and of sundry other corporations. In addition, the Receivers have taken depositions of cross-defendants Henry McGurren, Henry A. Finlay, and Braewood Building Corporation (through its President, Clark Frothingham), as well as the deposition of John P. Divito, an engineer who participated in the initial plans for the development of the entire Howie in the Hills project. All depositions and the documents identified therein have been offered into evidence and received without objection. In addition, all the books and records of City Savings Association were received in evidence without objection pursuant to this court's Order of January 23, 1969.

On June 26, 1964, the Department of Financial Institutions of the State of Illinois took custody of City Savings Association (hereafter "City Savings") a state-chartered savings and loan association, upon a finding, based upon an examination report issued by Peat, Marwick, Mitchell & Co., certified public accountants, that as of April 30, 1964, City Savings had a capital impairment exceeding $14,000,000. City Savings was closed by the State on June 30, 1964, and is currently in receivership under the jurisdiction of this court. City Savings is hopelessly insolvent.

At the time the State took custody—and for at least 20 years prior thereto—cross-defendant C. Oran Mensik had been the chief executive officer of City Savings, simultaneously holding the positions of President, Chairman of the Board of Directors and Chairman of the Executive Committee.

Cross-defendant Robert M. Kramer, Mensik's brother-in-law, became a Vice President of City Savings, a member of its Board of Directors and a member of its Executive Committee in 1954 and held these positions until City Savings was closed on June 30, 1964.

Mensik and Kramer operated City Savings, with Mensik the dominant figure and Kramer by his own admission functioning largely as assistant to and nominee and messenger boy for Mensik. Mensik and Kramer were assisted and supported in their efforts by the deceased cross-defendant Alexander J. Pikiel, Mensik's then attorney, whose offices adjoined those of City Savings in the City Savings Building at 1654 W. Chicago Avenue in Chicago, Illinois, and by various other persons, including cross-defendants Walter Kulikowski, Mildred Riehl and Marianne Barto.

From 1959 to 1964, cross-defendant Robert J. Zaucha was loan officer at City Savings. From 1959 until 1964, cross-defendants Francis J. Sochacki, Robert J. Siman and Angelo LoMonaco purportedly appraised properties on which City Savings made loans. However, it is undisputed that none of these cross-defendants honestly and responsibly performed the job he purported to hold; rather, all these persons responded utterly to Mensik's direction and control. All loan applications and appraisals were prepared in accordance with Mensik's directions, without regard to either the real identity or integrity of the purported borrower and wholly without regard to the true value of the land.

The primary function of the Executive Committee of City Savings was purportedly to approve the applications for loans submitted to it by Mensik. In addition to Mensik and Kramer, Joseph Holley, a director of City Savings, was a member of the Executive Committee until his death in 1959. Thereafter, cross-defendant Herbert J. Hoover became the third member of the Executive Committee.

As is obvious from the sad history of this institution, the Executive Committee and the Board of Directors of City Savings never fulfilled their responsibilities to the depositors and creditors to safeguard and protect City Savings'

funds and to make considered and prudent investments. No loan application that Mensik recommended was ever refused. Mensik alone decided the amounts of money to be loaned, which loans would be approved and under what conditions. In sum, Mensik alone, in the words of his attorney, Pikiel, "controlled the outpouring of funds from City Savings."

Under Mensik's domination, City Savings fell into ruin. By April 30, 1964, 82% of the entire loan portfolio of City Savings was concentrated in 776 loans in two projects, Apple Orchard in Bartlett, Illinois, and Howie in the Hills in Palatine Township, Illinois. The outstanding net unpaid balance of the Apple Orchard loans on June 30, 1964—when City Savings was closed—was $14,-827,415.20; the outstanding net unpaid balance of the Howie in the Hills loans was $5,675,047.14. Thus, City Savings' net investment in these two projects exceeded $20.5 million. The actual estimated value of these projects at the time City Savings was closed in 1964 was approximately $2,000,000. These loans were the greatest single factor in the demise of City Savings.

The mortgage loans made by City Savings on the security of the real estate in the Apple Orchard and Howie in the Hills projects were based upon grossly inflated and fraudulent appraisals. The loans were made to entities controlled by Mensik and Kramer and their nominees: Cross-defendants Henry McGurren, Carl M. Melberg, Fred Melberg, Vernon C. Melberg, Maurice Melberg, C. J. Szymanski, Thor Ringstrom, Herbert J. Hoover, Charles Hartman, M. A. Barto, Mildred Riehl, Genevieve Jarecki and Walter Kulikowski.

It was the general practice of City Savings to purportedly finance subdivision development in three phases. In phase 1, City Savings loaned mortgage money to various corporations and individuals, purportedly for the purchase of raw farm land. In phase 2, City Savings increased the mortgage loans on the same property for the purported purpose of subdividing the land and constructing sewer, water and other improvements such as streets and curbs. The outstanding unpaid balance of the first loan was "repaid" from the proceeds of the second mortgage loan. In phase 3, City Savings again increased the mortgage loan on the same property for the alleged purpose of constructing buildings. The unpaid balance of the second loan was "repaid" from the proceeds of the third loan. In reality, however, the moneys were not utilized by the purported borrowers for development; rather, vast amounts of these loan funds were used for purposes unrelated to the development of the land purportedly offered as security for the loans.

The case of A–1 Construction Corporation ("A–1") a purported developer in the Apple Orchard complex, illustrates the pattern of fraud. A–1 was incorporated in 1954 by Carl M. Melberg, Marianne Barto and I. L. Kunitz. Melberg was a long-time colleague of Mensik; Barto was Mensik's secretary and Mrs. Kunitz was Mensik's sister. During 1962, Robert M. Kramer became a director of A–1. The President of A–1, Walter Kulikowski, was identified by Pikiel as a "leg man" for Mensik. At all times, Mensik voted the stock and controlled and dictated the policies of A–1.

From 1959 through 1964, Mensik caused City Savings funds to be disbursed to A–1 Construction Corporation in amounts exceeding 2.7 million; the loans were based on grossly inflated appraisals. Of these funds, A–1 made pay-outs of approximately $2 million to persons and entities that had no relationship to nor participation in the development of the land, specifically:

A. From September 1960 through April, 1962, A–1 disbursed $124,000 to Country Life Developers, a partnership; Kramer and Mensik were the sole partners. Country Life purportedly provided advice to parties who borrowed money from City Savings as to the proper use and development potential of the lands mortgaged as security for the City Savings loans; in fact, Country Life

performed no such service. In addition, from March, 1960 through July of 1962, A–1 disbursed $17,500 directly to Mensik and $70,600 directly to Kramer. All these sums represented kickbacks to Mensik and Kramer for engineering the fraudulent loans to A–1.

B. From October of 1960 through September, 1962, A–1 disbursed $214,-000 to Dollar Investment Company. Kramer was President and a director of Dollar from its inception in 1960 to its dissolution in 1962. Mensik controlled the Dollar Investment Company stock, caused Kramer's election, and controlled and directed the operations of the Company.

C. From July of 1959 through July of 1962, $807,136.55 was disbursed by A–1 Construction Corporation to Capital Mortgage Company. Kramer was President and a director of Capital. He was elected by Mensik and Mensik directed and controlled the operations of the company. There were no disbursements of funds by Capital Mortgage, Dollar Investment or A–1 Construction except at Mensik's direction.

D. From May 1959 through October of 1961, A–1 disbursed $327,692.17 to the Commercial Savings & Loan Association of Maryland, a Mensik controlled stock savings and loan association in Maryland.

E. From June 25, 1959 through September 24, 1962, checks amounting to $383,137.97 were cashed at City Savings by A–1. It is clear that much of the funds from the checks cashed by A–1 at City Savings directly enriched Mensik and his cohorts. No officer or director of any of these corporations or of City Savings exercised any control or responsibility whatsoever to prevent this enormous fraud because Mensik was utterly in control.

The fraud was compounded by the Mensik dealings in Maryland through Dollar Investment Company. In addition to the $214,000 disbursed from City Savings to Dollar Investment Company through A–1 Construction as set forth above, City Savings extended funds di-

rectly to Dollar Investment Company in the amount of $516,975.56 from February, 1962 through July 1962. Dollar then paid out the money, in part as follows:

A. From February 23, 1960, through May 8, 1962, approximately $241,816.39 was re-funneled by Dollar Investment back to A–1 Construction Corporation.

B. From July of 1959 through February of 1962, over $20,000 was disbursed to Capital Mortgage Company.

C. From April, 1960 through April, 1962, approximately $125,000 was disbursed by Dollar to the Maryland Trust Savings & Loan Association, a Mensik controlled stock savings and loan institution in Maryland.

D. From June, 1960 through April 1962, approximately $40,000 was disbursed by Dollar to the First General Savings & Loan Association, a Mensik controlled stock savings and loan institution in Maryland.

E. From April 1960 through April, 1962, approximately $106,000 was disbursed by Dollar to the Maryland Thrift Savings & Loan Association, a Mensik controlled stock savings & loan institution in Maryland.

F. From June, 1960 through April, 1962, over $60,000 was disbursed by Dollar to the Maryland Financial Savings & Loan Association, a Mensik controlled stock savings and loan institution in Maryland.

Dollar Investment, acting as a front for Mensik, was the majority stockholder in all the Maryland institutions; Kramer was a director of each of the institutions. In addition to the funds set forth above, from January of 1962 through June of 1962, Mensik caused City Savings Association to directly disburse over $460,000 to the Maryland savings and loan institutions which he controlled.

These disbursements of City Savings funds to institutions and corporations controlled by Mensik and Kramer represented a breach of their fiduciary relationship to City Savings and its

depositors; moreover, the demise of City Savings was unquestionably caused by the improper disbursement of City Savings funds to the Mensik controlled corporations. Winger v. Chicago City Bank and Trust Company, 394 Ill. 94, 67 N.E. 2d 265 (1946); Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

■■ Where a fiduciary relationship exists as a matter of law, a person who profits from a transaction in his capacity as an officer or director of another corporation has the burden of proving that the transaction was in good faith. McCartney v. McCartney, 8 Ill.2d 494, 134 N.E.2d 789 (1956); Shlensky v. South Parkway Building Corporation, 19 Ill.2d 268, 166 N.E.2d 793 (1960). Mensik and Kramer have manifestly not met that burden here. To the contrary, the evidence shows and I so find that the transactions that they engineered as officers, directors and managing agents of both City Savings and the corporations receiving City Savings' funds were consummated solely for their personal benefit at the expense of City Savings and its members.

Subsequent to the disbursement of the City Savings funds and while City Savings were falling into ruin, Kramer removed all the books, records and documents of Dollar Investment, A–1 Construction Corporation and Capital Mortgage Company to Canada. The sole purpose of removing this documentary evidence, part of which was recovered and utilized by the Receivers in their discovery and which has been offered in evidence herein, was to render more difficult any attempt to unravel the tangled affairs of City Savings Association.

In addition to the City Savings funds Mensik diverted directly to corporations he controlled, Mensik further attempted to enrich himself by causing title to certain properties in the Apple Orchard and Howie in the Hills developments to be held by his nominees rather than mortgaged to City Savings as security for City Savings' enormous loans in these areas.

■ Because of the incomprehensible state of City Savings' records, it is not possible to trace City Savings' money directly into each of these parcels. However, the facts of this case dictate a finding that the land belongs in equity to City Savings for two reasons: First, it is undisputed that Mensik, as a matter of common practice, disbursed City Savings funds intended for his own use to nominees whom he controlled. The evidence adduced herein clearly establishes that the persons and corporations who hold title to these parcels are Mensik's nominees. It is, therefore, my finding based on the preponderance of the evidence before me that the properties under petition were acquired with City Savings funds; on this record a court of equity could find no less. Second, the properties acquired and retained by Mensik and his nominees in the Apple Orchard and Howie in the Hills developments are checkerboarded throughout those developments and are essential to the unified development of these areas. Yet, these parcels were never mortgaged to City Savings or held for its use when vast amounts of City Savings' funds were advanced to purportedly develop these areas. Thus, each of the properties under petition represented a corporate opportunity of City Savings which Mensik and Kramer as officers and directors of City Savings should have either procured for City Savings or at minimum caused City Savings to receive as additional security for City Savings' loans. Accordingly, I find that the facts of this case are such that neither Mensik nor Kramer nor their nominees nor cohorts can in equity retain these parcels as against the unfortunate depositors of City Savings in light of the frauds perpetrated upon City Savings. Allowing Mensik or his nominees to successfully assert any claims against the realty in question shocks the conscience of this Court.

An accurate history of all the conveyances involved in the Receivers' petition is reflected in the charts attached hereto as an Appendix. Two transactions re-

flected therein, one in Apple Orchard and one in Howie in the Hills, so clearly illustrate the pattern of land fraud practiced upon City Savings that they deserve some elaboration.

### A. THE NORTH EAST CORNER OF APPLE ORCHARD:

The "North East Corner" of the Apple Orchard Development, which is more fully described in the Appendix, was conveyed by George and Virginia Saum to Henry McGurren as Trustee on May 8, 1959. By deed dated May 6, 1959, the property had been conveyed by McGurren to A–1 Construction Corporation. Although City Savings made huge loans to A–1 to develop the Apple Orchard complex, this particular parcel was never mortgaged of record to City Savings. Rather, A–1 conveyed the parcel into land trust No. 30121 at the LaSalle National Bank on October 19, 1962. On May 10, 1964, that Trust conveyed the parcel to Robert's Realty Company, an Illinois corporation. (Robert Kramer was President and a director of Robert's Realty Company; he was elected by Mensik and acted as Mensik's nominee.) Robert's Realty conveyed the same parcel to Wright Mortgage Company on June 22, 1966. (Kramer was also President of Wright Mortgage Company. He was elected by Mensik and responded to Mensik's direction and control.) Wright Mortgage Company currently holds title as Mensik's nominee.

### B. UNIT 2 OF HOWIE–IN–THE–HILLS:

The Howie in the Hills development offers other examples of manipulation by Mensik and his cohorts. Unit 2 of Howie in the Hills was conveyed from Anton Cipri and his wife to Samuel R. Ballis on April 11, 1959. Thereafter, on December 14, 1962, Ballis conveyed the farm to Howie in the Hills Building Corporation, an Illinois corporation. (Robert Kramer was a Director of Howie in the Hills, which received more than $1.5 million in City Savings funds. Alexander J. Pikiel was registered agent, President and had acted as an incorpo-

rator. Howie in the Hills Building Corporation was a nominee for Mensik.) On October 13, 1964, Howie in the Hills conveyed Unit 2 to Suburban Life Builders Corporation, an Illinois corporation. (Mensik admittedly owns Suburban Life. Kramer is Vice President and Registered Agent, having been elected by Mensik. He responds to Mensik's direction and control.) Suburban Life Builders still holds title to Unit 2—except for the portion thereof known as Palatine Estates—as Mensik's nominee.

■ The evidence clearly establishes and I now so find that these conveyances, and all the conveyances set forth in the Appendix, were engineered by Mensik, Kramer, McGurren and their cohorts to disguise the true ownership of these parcels of land; the land in fact is controlled by Mensik and was acquired pursuant to the scheme of fraud perpetrated upon City Savings' depositors in breach of Mensik's and Kramer's fiduciary relationship to City Savings. See Central Ry. Signal Co. v. Longden, 194 F.2d 310 (7th Cir. 1952); Henry's Drive-In, Inc. v. Anderson, 37 Ill.App.2d 113, 185 N.E.2d 103 (1st Dist. 1962).

From 1959 through 1964 over $1,000,000 of City Savings funds was disbursed directly by City Savings to the American Reserve Insurance Company, Ltd. and the American Fidelity Insurance Company, Ltd. as purported premiums for the insurance of the City Savings loans to the Mensik controlled corporations. In fact, neither American Fidelity nor American Reserve functioned as an insurance company. Rather, both companies acted solely as conduits of City Savings funds and were merely names used by Mensik, Kramer and McGurren to disguise their control of funds in accounts at branches of the Canadian Imperial Bank of Commerce in Toronto, Montreal and Nassau.

American Reserve and American Fidelity—together with Eastern Trust Company—were "tentacles of the same entity" and used their funds interchangeably, according to Henry McGurren, who acted as American counsel for the cartel

and was sole signatory of their bank accounts at the Canadian Imperial Bank of Commerce. Kramer testified that Eastern Trust Company—one of the tentacles—owned stock in several corporations of which Kramer was an officer or director and which Mensik dominated and controlled, including: Fidelity Thrift Co., Security Thrift Co., Washington Capital Corporation, Robert's Realty Company, Wright Mortgage Co., Prime Investment Co., Suburban Life Builders Corp., and Utopia Building Co. However, it is evident that Eastern Trust Company—like American Reserve and American Fidelity—was merely a name used by Mensik to disguise his control of the corporations he dominated and to provide a front for his deposits in foreign banks.

It is clear from all of the evidence that Henry McGurren was a central figure in the scheme to defraud City Savings Association. McGurren's claims that he acted only as an attorney or as a trustee of a naked land trust tax the credulity of the Court.

Having observed McGurren's testimony on the witness stand, I found him to be at best evasive and intentionally misleading in his answers. His demeanor rendered an otherwise incredible story even more unbelievable.

His testimony is replete with contradictions, purported lapses of memory and implausible explanations as to whom he represented and in what capacity, particularly for an experienced attorney with an extensive real estate practice. For example:

A. McGurren purportedly represented Herbert J. Hoover, a director of City Savings Association, with respect to the acquisition of the Saum and Van Wagner tracts in the Apple Orchard Complex. (See Appendix) However, he testified that he never ascertained the nature and extent of Hoover's authority to act for A-1 Construction Corporation or Capital Mortgage Company, the purported purchasers.

B. On January 25, 1963, the Executive Committee of City Savings approved a purported loan to Howie in the Hills Building Corporation of $340,000. Prior to the disbursement of these funds, $247,250.00 of the $340,000.00 was siphoned off to American Reserve Insurance Company by means of two City Savings checks dated January 24, 1963, the day before the loan was approved by the Executive Committee. These checks were negotiated to and deposited by McGurren in the account of American Fidelity Insurance Company, Ltd. at the Canadian Imperial Bank of Commerce in Nassau, Bahamas. One month later, $66,737.86 from the identical account was disbursed through McGurren to Mrs. Martha Baker for the acquisition of a parcel of land on which City Savings made loans exceeding $4.8 million. Although McGurren caused Mrs. Martha Baker to convey her property to LaSalle National Bank Trust No. 30647, he professed not to know who the beneficiaries of the trust were.

Over $2.7 million of these funds were disbursed by City Savings to persons and corporations unrelated to the development of the land, including:

(a) $434,951.13 to Walter's Realty Company. (Kramer was an officer and director of Walter's; he was elected by Mensik and responded to his direction and control. The President of Walter's was Walter Kulikowski.)

(b) $365,434.50 to Prime Investment Company. (Kramer was President of Prime. He was elected by Mensik voting stock purportedly owned by Eastern Trust Company and was responsible to Mensik's direction and control.)

(c) $134,370.08 to Fidelity Thrift Corporation. (Kramer is a Director of Fidelity Thrift. He was elected by Mensik voting stock purportedly owned by Eastern Trust Company; he responded at all times to Mensik's direction and control); and

(d) $61,953.31 directly to Eastern Trust Company.

The excess of net loan balances over appraised value of this parcel as of June 30, 1964, exceeded $4.5 million. The

Baker Farm is now commonly referred to as the Apple Orchard Shopping Center, and City Savings currently holds title as a result of foreclosure proceedings.

In open court, when pressed for an explanation as to why American Fidelity's money was used to purchase the Baker parcel, McGurren "explained" that originally American Fidelity intended to buy the property but later decided it could not take title to property in Illinois. It was purportedly decided instead that American Fidelity would acquire stock in whatever corporation took title from Mrs. Baker. However, the transaction was never completed and American Fidelity purportedly never received any consideration at all for its payment of over $66,000 to Mrs. Baker.

C. McGurren said he could not remember how many claims of City Savings against American Fidelity and American Reserve were paid while he was counsel for the insurance companies. In fact, City Savings records are devoid of any records of claims made by City Savings despite more than one million dollars in premiums disbursed to American Reserve and American Fidelity and despite the fact that many of the mortgage loans purportedly insured by American Reserve and American Fidelity are in default.

These manipulations and discrepancies, when viewed in light of McGurren's participation in almost every single aspect of the City Savings fraud and when placed in the perspective of his extensive dealings with Mensik for many years, lead inescapably to the conclusion and I now so find that McGurren acted as a conspirator with and nominee for Mensik.

Only two of the parcels of property under petition are purportedly owned by parties claiming title as bona fide purchasers for value: Braewood Building Corporation purports to own Palatine Estates, a subdivision comprising a portion of Howie in the Hills, Unit 2; and Peerless Closure Company purports to own a parcel of land centered squarely in the middle of the Apple Orchard Development which has been identified as the Mensik Homesite because Mensik lived there from March 1, 1963 until his imprisonment in 1968. Both parcels are fully described in the Appendix. The facts concerning these entities are as follows:

PALATINE ESTATES (Braewood Building Corporation):

In March of 1966, Suburban Life Builders Corporation purported to convey Lot 12 of Block 32 of Howie in the Hills, Unit 2, to Braewood Building Corporation ("Braewood"). On May 12, 1966, Howie-in-the-Hills Building Corporation quit-claimed the same property to Braewood. This parcel was later subdivided into 22 smaller lots and became known as Palatine Estates. Clark Frothingham and his wife together with Henry McGurren own and control Braewood. Although Frothingham has claimed that he received this land in payment for services rendered as an engineer in Howie in the Hills, in fact Braewood took title from these corporations pursuant to a plan, indeed, a conspiracy, whereby Braewood would act as a nominee and hold the land until directed by Mensik and McGurren to reconvey. This finding is predicated not only on my observation of Frothingham on the witness stand, but on the evidence adduced at the depositions of Frothingham and McGurren. Thus:

A. Although Frothingham knew at the time he entered into the agreement to do engineering work that Mensik had been charged with grave frauds in connection with City Savings loans in Howie in the Hills, he was nonetheless willing to assist Mensik in the proposed development of Howie in the Hills, Unit 2.

B. Frothingham received payments from an escrow at the Chicago Title and Trust Company for the work he purportedly performed in Howie in the Hills. The records of the Chicago Title and Trust Company indicate Frothingham signed waivers of lien and received $21,000 from Escrow #296868 in connection

with Howie in the Hills, Unit 3 and $6,300 from Escrow #290397 in connection with Howie in the Hills, Units 2 and 4. The Waivers of Lien state:

"[T]here are no other contracts for said work outstanding; * * * there is nothing due and to become due to any person for material, labor or other work of any kind done or to be done upon or in connection with said work. * * *"

Notwithstanding his execution of this contractor's affidavit, Frothingham testified that in connection with a payment of $18,000 for work on Unit 3, he signed the waiver at Kramer's request, retained only $4,000 and disbursed the balance to other companies named by Kramer. In short, he admitted to executing fraudulent waivers of lien.

C. An option contract purportedly executed on behalf of Suburban Life Builders on December 6, 1965, purportedly gave Frothingham the option to purchase Lot 12 in Block 32 (Palatine Estates) on or before March 1, 1966, for the sum of $121,000 in order to resubdivide it into 22 lots. The stated consideration for the option was $1,000. This option was not recorded for more than two years, until June 19, 1968. Frothingham denied ever seeing the option and denied he ever paid Suburban Life $1,000 as consideration.

D. An assignment of Utopia Building Company of Suburban Life Builders' interest in the option contract purportedly executed January 11, 1968 was also recorded on June 19, 1968. Utopia, which was dominated and controlled by Mensik and Kramer purportedly acted as general contractor and supervisor of the entire Howie-in-the-Hills. However, Frothingham denied any knowledge of the assignment.

E. A mechanics lien claim on behalf of Utopia Building Company in the sum of $106,000 for work purportedly done by Utopia prior to December 5, 1966 on Palatine Estates was also recorded on June 19, 1968. Frothingham testified that Utopia put in the sewer and water for the 22 lots but not until 1968, and

disclaimed any knowledge of the lien claim.

Frothingham conveyed Lots 1 to 11 and 18 to 22 of Palatine Estates to Janet Aniline, a nominee, on October 21, 1968. On November 28, 1968, Janet Aniline and Orm Aniline conveyed these same lots to Henry McGurren, purportedly as trustee under a trust agreement having no number and bearing only the date 1968. On February 27, 1969, McGurren as trustee conveyed these lots to Margery Selvin, another nominee. Despite the fact that he testified that he needed cash, Frothingham conveyed these lots before he had any written agreement whatsoever; moreover, he has admittedly never received any money from Kramer, McGurren, Aniline, Selvin, or anyone else as consideration for the conveyances. This is hardly the behavior of a person who actually owns real estate. These are the actions of a nominee.

On March 11, 1969, three quit-claim deeds purportedly signed September 30, 1968, were recorded. These deeds conveyed all of the interest of Suburban Life Builders, Washington Capital Corporation and Utopia Building Company in and to Lots 12 to 17 in Palatine Estates Subdivision to Braewood. The deed from Suburban Life was executed by Mensik; the deed from Washington Capital was executed by Kramer; and the deed from Utopia was executed by Kramer. The acknowledgments were all taken by McGurren. On the same day, March 11, 1969, a quit-claim deed was recorded conveying all of Braewood's interest in and to Lots 12 to 17 to Joy A. Lutgert, McGurren's daughter. Frothingham testified that he conveyed the lots to her at McGurren's request, that McGurren paid him with a note and that he never received any money from McGurren. This again is the behavior of a nominee.

Subsequent to the Receivers' petition to redeem these lots, Lots 12 to 17 of Palatine Estates were reconveyed to Braewood, which now holds title thereto. Henry McGurren as Trustee currently

holds title to Lots 1 to 11 and 18 to 22 of Palatine Estates.

█ From all the testimony adduced herein and from my own observation of Frothingham and McGurren on the witness stand, I must find and conclude that Braewood is a nominee for Mensik and Kramer and that Braewood and McGurren as trustee hold title to Palatine Estates subject to City Savings' claims. I further find and conclude that Braewood and Frothingham have never held any interest in Palatine Estates other than to hold title as nominees and respond to the directions of Mensik and his cohorts. Braewood did not acquire these parcels as a bona fide purchaser for value without notice; McGurren engineered the transaction for both Braewood and the Mensik controlled corporations and Braewood acquired only the interest of Suburban Life Builders and Howie in the Hills Building Corporation. Suburban Life Builders and Howie in the Hills Building Corporation held title as Mensik's nominees pursuant to the scheme to defraud the depositors of City Savings and thus held title as constructive trustees for the benefit of City Savings. Braewood stands in precisely the same posture. See Mortell v. Beckman, 16 Ill.2d 209, 157 N.E.2d 63 (1959); Edgerton v. Johnson, 178 F.2d 106 (7th Cir. 1949); Burnex Oil Co. v. Floyd, 106 Ill.App.2d 16, 245 N.E.2d 539 (1st Dist. 1969).

PEERLESS CLOSURE COMPANY (Mensik Homesite)

█ Cross-defendant Peerless Closure Company ("Peerless") is a holding company for the investments of Henry A. Finlay, Jr., who is a cross-defendant herein individually. Henry McGurren is registered agent of Peerless.

Finlay's connection with the Mensik cartel is extensive and long standing. In May, 1964, Finlay agreed to purchase 60% of the stock of Washington Capital Corporation, the purported owner of Unit 3 of Howie in the Hills. (Mensik owns Washington Capital. Kramer is president and a director, having been elected by Mensik.) Finlay's agreement to purchase the stock of Washington Capital never was consummated; rather, beginning in December of 1964 and continuing through December of 1965, Finlay made extensive loans to several Mensik controlled corporations, including Washington Capital, United Capital Corporation (Kramer, Walter Kulikowski, and Mildred Riehl were incorporators and Kramer was registered agent) and Fidelity Thrift Corporation (Walter Kulikowski, Mildred Riehl and Robert Kramer were the officers and directors). As security, Finlay received stock in all these corporations.

Finlay testified that he later filed suit to recover these sums. He was unable to identify any of the parties to the suit but simply stated that he received his money and returned the stock. Specifically, on September 30, 1966, Finlay transferred all the Washington Capital stock to Mensik.

Despite his purported disillusionment with the Washington Capital, United Capital, Fidelity Thrift cartel, however, Finlay in May of 1967 purportedly agreed to acquire the Mensik Homesite from Washington Capital on behalf of Peerless for $50,000. Washington Capital was to have an option to repurchase the land within 90 days for $60,000, an equivalent of 80% interest per year on the $50,000 investment. The $50,-000 was obtained from the Canadian Imperial Bank of Commerce, purportedly as a loan to the American World Investment Association, Ltd., a Bahamian corporation controlled by Finlay that acted as a rubber stamp for Finlay's foreign investments. Significantly, American World was set up with the assistance of Henry McGurren; Francisco Rodriguez and Charles Grant, the same persons used by McGurren and Mensik as front men for American Reserve, American Fidelity and Eastern Trust, were set up as officers of American World. In return for the $50,000 advance to Washington Capital, Finlay received an assignment of Washington Capital's beneficial

interest in the land trust of which Mc-Gurren was trustee; the assignment was executed by Kramer as Vice President of Washington Capital. Finlay also received as security the assignment of Washington Capital's interest in a trust deed and note dated January 15, 1958, in the amount of $300,000. The note and trust deed (Defendant Peerless' Exhibits "E" and "EE") indicated that the personal obligation of the makers thereof, Eleanor S. Van Wagner and Paul D. Van Wagner, had been released by Capital Mortgage Company, Robert Kramer, President; that the rights of Capital Mortgage had been assigned on October 10, 1962, to Eastern Trust Company; and that the rights of Eastern Trust Company had been assigned to Washington Capital on June 30, 1965. The notations on the note accompanying the trust deed on the Mensik Homesite were a warning signal to any prudent purchaser to make a thorough investigation as to the status of the property. This was particularly true in Finlay's case because he knew that the persons who executed the various assignments mentioned above were unreliable. However, Finlay admitted that he never sought to investigate Washington Capital's acquisition of its interest in the Mensik Homesite.

Finlay knew at the time he entered into the agreement to acquire the Mensik Homesite, purportedly on behalf of Peerless, that he was dealing with the Mensik cartel and that the Mensik cartel was utterly and completely untrustworthy. As he testified: "I had trouble with these people before and by gum I was going to make a buck." Moreover, Finlay admitted the high repurchase price to Washington Capital was dictated because he was "discounting a mortgage of dubious quality." Finally, at the time Finlay closed the transaction on the Mensik Homesite on behalf of Peerless, Mensik was living on the property and Mensik's brother-in-law, Kramer, was acting on behalf of Washington Capital.

I find Finlay's actions on behalf of Peerless in the acquisition of the Mensik Homesite are wholly inconsistent with the standard of conduct required of one who holds himself out as a bona fide purchaser for value without notice. I find his testimony concerning his claim of ownership of the land in question not believable.

Peerless took title to the Mensik Homesite subject to all the defects in the titles held by Henry McGurren as Trustee and Washington Capital Corporation—the prior parties in interest. McGurren and Washington Capital as Mensik's nominees held their respective interests pursuant to the scheme to defraud the depositors of City Savings and thus held these interests as constructive trustees for the benefit of City Savings. Peerless stands in precisely the same posture as Washington Capital and Henry McGurren as Trustee. The conveyance to Peerless cannot defeat the claims of City Savings. See Doyle v. Teas, 5 Ill. 202 (1843); Heitman Trust Co. v. Parlee, 314 Ill.App. 83, 40 N.E.2d 732 (1st Dist. 1942).

I accordingly find from all the evidence that the existence of a scheme to defraud the depositors of City Savings has been proved clearly, convincingly and unequivocally. The participants in the scheme were Mensik, Kramer, McGurren, Finlay, Braewood, Peerless and the other officers and directors of City Savings and of the corporations named as purported owners of the properties here under petition. Pursuant to this scheme, Mensik caused title to said properties to be held in the names of various persons and corporations which he controlled. I specifically find that the following persons hold title to the properties they purport to hold, as nominees for C. Oran Mensik and Robert M. Kramer: Suburban Life Builders Corporation; Braewood Building Corporation; Henry McGurren; Henry McGurren as Trustee under an undated Trust Agreement; and under a Trust Agreement dated November 28, 1968; Washington Capital Corporation; Wright Mortgage Company; Howie-in-the-Hills Building Corporation; Melvin Building Corporation;

LaSalle National Bank as Trustee under Trust Agreement dated October 1, 1963, known as Trust No. 32317; LaSalle National Bank as Trustee under Trust Agreement dated December 28, 1962, known as Trust No. 30647; Fidelity Thrift Corporation; Henry McGurren as Trustee under Trust Agreement dated January 28, 1968; Long Life Building Corporation; Henry McGurren as Trustee under Trust Agreement dated January 10, 1959; Robert's Realty Company; Security Thrift Corporation; LaSalle National Bank as Trustee under Trust Agreement dated January 4, 1962, known as Trust No. 29042; Robert Kramer; Henry McGurren as Trustee under Trust Agreement dated January 25, 1968, known as Trust No. 1; Peerless Closure Company and LaSalle National Bank as Trustee under Trust Agreement dated August 4, 1961, known as Trust No. 28425.

I also specifically find that neither Peerless Closure Company nor Braewood Building Corporation acquired rights in the properties they purport to own as a bona fide purchaser for value without notice. Both Braewood and Peerless through their officers and directors dealt extensively with Mensik, were aware of his manipulations and devices and took such rights as they purported to acquire subject to City Savings' claims. The protestations of Clark Frothingham, Henry McGurren and Henry Finlay, Jr. to the contrary are without support in the record and could not be believed by anyone who has had an opportunity, as I have, to observe their demeanor while testifying on the witness stand.

I further find that title to the properties here under petition was acquired by the persons and corporations set forth in the Appendix as nominees for Mensik and Kramer, who were acting in breach of their fiduciary obligations due and owing to City Savings; and that the evidence herein clearly and unequivocally dictates the imposition of a constructive trust on the parcels of land here under petition.

Wherefore, it is hereby ordered, adjudged and decreed:

1. A constructive trust for the use and benefit of City Savings Association is hereby imposed upon the real estate described as parcels I through and including XIV of the Appendix.

2. All right, title and interest in and to the real estate described as parcels I through and including XIV in the Appendix be and hereby is vested in City Savings Association instanter free of all claims of cross-defendants Suburban Life Builders Corporation, Braewood Building Corporation, Henry McGurren, Henry McGurren as Trustee under an undated Trust Agreement, Henry McGurren as Trustee under Trust Agreement dated November 28, 1968, Washington Capital Corporation, Wright Mortgage Company, Howie-in-the-Hills Building Corporation, Melvin Building Corporation, LaSalle National Bank as Trustee under Trust Agreement dated October 1, 1963, known as Trust No. 32317, LaSalle National Bank as Trustee under Trust Agreement dated December 28, 1962, known as Trust No. 30647, Fidelity Thrift Corporation, Henry McGurren as Trustee under Trust Agreement dated January 28, 1968, Long Life Building Corporation, Henry McGurren as Trustee under Trust Agreement dated January 10, 1959, Robert's Realty Company, Security Thrift Corporation, LaSalle National Bank as Trustee under Trust Agreement dated January 4, 1962, known as Trust No. 29042, Robert Kramer, Henry McGurren as Trustee under Trust Agreement dated January 25, 1968, known as Trust No. 1, Peerless Closure Company, and LaSalle National Bank as Trustee under Trust Agreement dated August 4, 1961, known as Trust No. 28425.

3. The conveyances from Henry McGurren as Trustee under Trust Agreement dated January 10, 1959, to the persons, corporations and trusts set forth below, to the extent such conveyances may have affected the real estate indicated below, constituted a fraud upon

City Savings Association and its members; and these conveyances together with all mesne conveyances indicated below are hereby declared null and void:

| GRANTEE | DATE OF DEED | PARCEL* |
|---|---|---|
| A–1 Construction Corporation | Feb. 14, 1959 | VIII |
| A–1 Construction Corporation | May 6, 1959 | IX, X, and XI |
| LaSalle National Bank as [1] Trustee under Trust Agreement dated Jan. 4, 1962, known as Trust No. 29042 | Jan. 4, 1962 | XII |
| Peerless Closure Co.[2] | Jan. 28, 1969 | XIII |
| Peerless Closure Co.[3] | Jan. 27, 1969 | XIV |

4. The following corporations, trustees, and individuals are hereby ordered and directed to convey within fourteen (14) days all right, title, and interest they each may have or claim in and to the real estate indicated below to City Savings Association by quit claim deed or trustee's deed as the case may be:

| CORPORATIONS, TRUSTEES, INDIVIDUALS | PARCELS* |
|---|---|
| Suburban Life Builders Corporation | I: II; and IV |
| Braewood Building Corporation | II; |
| Henry McGurren | II, VII through and including XIV |
| Henry McGurren as Trustee under an undated Trust Agreement and under Trust Agreement dated November 28, 1968 | II; |
| Washington Capital Corporation | III, XII, XIII, and XIV |
| Wright Mortgage Corporation | Lots A, B, C, 100 through and including 123, and 138 through and including 144 of III; VII; X; and XIII; |
| Howie-In-The-Hills Building Corporation | I; and V; |
| Melvin Building Corporation | V; |
| LaSalle National Bank as Trustee under Trust Agreement dated October 1, 1963, known as Trust No. 32317 | V; |
| LaSalle National Bank as Trustee under Trust Agreement dated December 28, 1962, known as Trust No. 30647 | VI; |
| Fidelity Thrift Corp. | VII; |

---

* See Appendix.

1. By a mesne conveyance from Mildred G. Riehl dated 1/4/62.

2. By a series of mesne conveyances commencing with a deed to Joy Lutgert and Scott Lutgert dated 1/24/68, who then conveyed the premises by a deed dated 1/26/68 to Henry McGurren as Trustee under Trust Agreement dated 1/25/68, known as Trust No. 1 from which trustee the conveyance in question was obtained.

3. By a series of mesne conveyances commencing with a deed to Mildred G. Riehl dated Oct. 6, 1961, who then conveyed the premises by deed dated Oct. 7, 1961 to the LaSalle National Bank as Trustee under Trust Agreement dated Aug. 4, 1961, known as Trust No. 28425 from which trustee the conveyance in question was obtained.

| CORPORATIONS, TRUSTEES, INDIVIDUALS | PARCELS* |
|---|---|
| Henry McGurren as Trustee under Trust Agreement dated January 28, 1968 | VII; |
| Long Life Building Corporation | VIII; IX; |
| Henry McGurren as Trustee under Trust Agreement dated January 10, 1959 | VIII through and including XIV; |
| Robert's Realty Company | X; |
| Security Thrift Corporation | XI; |
| LaSalle National Bank as Trustee under Trust Agreement dated January 4, 1962, known as Trust No. 29042 | XII; |
| Robert Kramer | VII; |
| Henry McGurren as Trustee under Trust Agreement dated January 25, 1968, known as Trust No. 1 | XIII; |
| Peerless Closure Company | XIII and XIV; |
| LaSalle National Bank as Trustee under Trust Agreement dated August 4, 1961, known as Trust No. 28425 | XIV |

Defendant Robert Kramer is hereby directed and ordered to execute the deeds of Washington Capital Corporation, Wright Mortgage Corporation, Howie-in-the-Hills Building Corporation, Melvin Building Corp., Fidelity Thrift Corporation, Long Life Building Corp., Robert's Realty Co., and Security Thrift Corporation, as an officer or director of said corporations.

5. The Receivers are hereby directed to prepare such deeds as may be necessary to comply with this Order and to procure such signatures thereon as may be required for compliance herewith.

6. I hereby expressly find that there is no just reason to delay enforcement of this Order and I hereby direct that final judgment enter pursuant to the terms hereof in favor of counter plaintiff, City Savings Association.

## APPENDIX

1. UNIT NO. 2, HOWIE-IN-THE-HILLS (Area in blue on Exhibit H–52)

Blocks 24, 25, 30, 31, 32, 33 and 34 of the Howie-In-The-Hills Unit No. 2, a Subdivision in the Northwest quarter of Section 19, Township 42 North, Range 10 East of the Third Principal Meridian in Cook County, Illinois.

Also known as:

Lots 6 through 10 both inclusive of Block 25, lots 12 through 22 of Block 24, lots 1 through 10 both inclusive of Block 30, lots 1 through 22 both inclusive of Block 31, lots 1 through 23 both inclusive of Block 32, lots 1 through 10 both inclusive of Block 33 and lots 1 through 10 both inclusive of Block 34 of Howie-in-the-Hills Unit No. 2, a Subdivision in the North-

* See Appendix.

west quarter of Section 19, Township 42 North, Range 10 East of the Third Principal Meridian in Cook County, Illinois.

| GRANTOR | GRANTEE | PET'S EX. NO. | DATE OF INSTRUMENT | REMARKS |
|---|---|---|---|---|
| Anton Cipri & Elizabeth Cipri | Samuel R. Ballis | 5 | April 11, 1959 | |
| Samuel R. Ballis | Howie-In-The Hills Building Corp., an Ill. corporation [1] | 29 | Dec. 14, 1962 | |
| Howie in the Hills Building Corp. | Suburban Life Builders corporation, an Ill. corporation [2] | 38a | Oct. 13, 1964 | |

[Note: See Palatine Estates below at II for disposition of Lot 12 of Block 32 of Unit No. 2.]

II. PALATINE ESTATES (Area in blue bordered in green on Exhibit H–52)

Lots 1 through 22 of Palatine Estates Subdivision, a resubdivision of Lot 12 of Block 32 of Howie-In-The-Hills Unit No. 2, a Subdivision in the Northwest quarter of Section 19, Township 42 North, Range 10 East of the Third Principal Meridian in Cook County, Illinois.

| GRANTOR | GRANTEE | PET'S EX. NO. | DATE OF INSTRUMENT | REMARKS |
|---|---|---|---|---|
| [Note: For history of title prior to 1965 see Unit No. 2 above at I.] | | | | |
| Suburban Life | Braewood Building Corp., an Ill. corporation [3] | 23 | Mar. 1, 1966 | |
| Braewood | Janet Aniline | 36 | Oct. 21, 1968 | Lots 1 to 11 & 18 to 22 |
| Janet Aniline and Orm Aniline | Henry McGurren as Trustee (no date or number of agreement) | 37 | Nov. 28, 1968 | Same |
| Henry McGurren as Trustee | Margery Selvin [4] | 35 | Feb. 27, 1969 | Same |
| Braewood | Joy A. Lutgert [5] | 34 | Feb. 26, 1969 | Same |

1. Kramer is a director of Howie in the Hills Building Corp. (Tr. 242; Ex. A–79) and Alexander J. Pikiel was registered agent, incorporator and former President. (Ex. A–79)

2. Mensik owns Suburban Life Builders (Mensik dep., pp. 110–111) and Kramer is Vice President and registered agent. (Ex. A–86; Tr. 252)

3. McGurren is an officer and a director of Braewood. (Frothingham deposition of 4/11/69 at p. 13)

4. These lots have been reconveyed to McGurren (order of 8/7/69 in the instant cause), who has been ordered to show cause why Palatine Estates should not be conveyed forthwith to City Savings (Id.) This rule applies to all the lots in Palatine Estates (Hearing on Rule to Show Cause, 9/30/69 at p. 33).

5. Joy Lutgert is McGurren's daughter. (Frothingham deposition of 4/11/69 at p. 94)

III.  UNIT NO. 3, HOWIE–IN–THE–HILLS (Area in purple on Exhibit H–52)

Lots "A", "B" and "C" and Lots 1 through 307 both inclusive of Howie-In-The-Hills Unit No. 3, a Subdivision in the South half of Section 19, Township 42 North, Range 10 East of the Third Principal Meridian in Cook County, Illinois.

| GRANTOR | GRANTEE | PET'S EX. NO. | DATE OF INSTRUMENT | REMARKS |
|---|---|---|---|---|
| Edwin H. Thurnau & Olive D. Thurnau | Central National Bank as Trustee under Trust Agreement dated 4/22/60, known as Trust No. 4596 | H–7 | Apr. 22, 1960 | |
| Central National Bank Trust No. 4596 | Washington Capital Corporation, an Ill. corporation ("Washington Capital") [6] | H–48a | Apr. 24, 1966 | Lots 1–307 |
| Washington Capital | Village of Hoffman Estates | H–50 | Dec. 8, 1967 | Lots 16 and 26 |
| Washington Capital | Wright Mortgage Corp., an Ill. corporation ("Wright Mortgage") [7] | H–51 | May 8, 1960 | Lots A, B and C, 100–123, and 138–144 |

IV.  UNIT NO. 4, HOWIE–IN–THE–HILLS (Area in green on Exhibit H–52)

Lots 1 to 115 of Howie-In-The-Hills Unit No. 4, a subdivision in the Southeast quarter of Section 19, Township 42 North, Range 10 East of the Third Principal Meridian in Cook County, Illinois.

| GRANTOR | GRANTEE | PET'S EX. NO. | DATE OF INSTRUMENT | REMARKS |
|---|---|---|---|---|
| William H. Lang & Martha W. Lang | Central National Bank as Trustee under Trust Agreement dated 12/19/62, known as Trust No. 5231 | H–27B | May 25, 1965 | |
| Central National Bank Trust No. 5231 | Suburban Life Builders Corp. [8] | H–47a | Jan. 31, 1966 | |

———————◆———————

6.  Mensik owns Washington Capital (Mensik deposition, p. 110) and Kramer is President (Ex. A–63.2; Tr. 229). He was elected by Mensik voting stock owned by Eastern Trust Co. (Tr. 229)

7.  Kramer is President of Wright Mortgage Co. (Ex. A–60.1; Tr. 229–230). He was elected by Mensik.

8.  See footnote 2, supra.

V. BLOCK 29, HOWIE–IN–THE–HILLS

Lots 1 through 23, in Block 29, Howie-In-The-Hills Unit No. 1, being a Subdivision in Section 19, Township 42 North, Range 10 East of the Third Principal Meridian in Cook County, Illinois.

| GRANTOR | GRANTEE | PET'S EX. NO. | DATE OF INSTRUMENT | REMARKS |
|---|---|---|---|---|
| R. Campbell Fox & Eleanora Crosh Fox | Central National Bank as Trustee under Trust Agreement dated 5/1/57, known as Trust No. 4011 | H–1 | May 6, 1957 | Area in yellow on Exhibit H–52 |
| Central National Bank Trust No. 4011 | Joan E. Davis | H–9b | Oct. 3, 1960 | Same |
| Joan E. Davis | Robert R. Rissman as Trustee under Trust Agreement dated 7/18/59, known as Trust No. 1 | H–9a | Oct. 3, 1960 | Same |
| Robert R. Rissman Trust No. 1 | Howie in the Hills Building Corp.[9] | H–11 | Jan. 19, 1961 | Same |
| Howie in the Hills Building Corp. | Boone Building Corp., an Ill. corporation ("Boone") and New Castle Building Corp., an Ill. corporation ("New Castle") | H–20a, 20d and 21 | Aug. 2, 1961 | Sundry blocks |
| Boone | Melvin Building Corp., an Ill. corporation ("Melvin")[10] | H–25 | Aug. 8, 1961 | Several blocks |
| Melvin | Country Life Developers, Inc. an Ill. corporation ("Country Life") | H–32b, d, e, f, h | Dec. 17, 1962 | Sundry blocks |
| Boone | Howie in the Hills Building Corp. | H–32 9 | Dec. 17, 1962 | Same |
| Howie in the Hills Building Corp. | Boone | H–32c | Dec. 31, 1962 | Same |

9. See Footnote 1, supra.

10. Kramer and I. L. Kunitz, Mensik's sister, were alternately directors of Melvin. (Ex. A–81)

| GRANTOR | GRANTEE | PET'S EX. NO. | DATE OF INSTRUMENT | REMARKS |
|---|---|---|---|---|
| Melvin | Casey Construction Co., an Ill. corporation ("Casey") | H–32a | Dec. 31, 1962 | Same |
| Melvin | ·Casey | H–34a | Dec. 31, 1963 | Same |
| Boone | Casey | H–34b | Dec. 31, 1963 | Same |
| Country Life | Howie in the Hills Building Corp. | H–34c | Same | Same |
| Howie in the Hills Building Corp. | LaSalle National Bank as Trustee under Trust Agreement dated 10/1/63 known as Trust No. 32317 | H–35a | Oct. 1, 1963 | Lots 1–9 and 15–23 of Blk. 29 |
| Melvin | Same | H–35b | Same | Lots 10–14 of Blk. 29 |

VI. THIRTY-THREE FEET SOUTH OF APPLE ORCHARD SHOPPING CENTER (Area in red on Pet's. Ex. No. A–73.0)

The South 33 feet of the following described parcel:

That part of the South half of Section 4 and the North half of Section 9, Township 40 North, Range 9, East of the Third Principal Meridian, described as follows: Beginning at a point on the South line of said Section 4 which is 15.42 chains West of the South East corner of said Section 4; proceed thence South $2\frac{3}{4}$ degrees East for a distance of 4.06 chains; proceed thence South $89\frac{3}{4}$ degrees West, along a line parallel with the North line of said Section 9 for a distance of 34.05 chains; proceed thence North $\frac{7}{8}$ degree East for a distance of 44.28 chains to the North line of the South half of said Section 4; proceed thence North $89\frac{3}{4}$ degrees East, along said North line for a distance of 10.32 chains; proceed thence South $\frac{7}{8}$ degree West (along a line parallel to the West line of the property herein described) for a distance of 29.30 chains; proceed thence North $89\frac{3}{4}$ degrees East for a distance of 10.37 chains; proceed thence South $85\frac{3}{4}$ degrees East $1\frac{2}{16}$ chains; proceed thence South $2\frac{3}{4}$ degrees East for a distance of 10.14 chains to the place of beginning; excepting therefrom that part thereof described as follows: Beginning at the center of said Section 4; proceed thence Westerly along the East and West quarter section line for a distance of 594.0 feet; proceed thence Southerly along a line that forms an angle of 88 degrees 46 minutes to the left with the prolongation of the last described course for a distance of 1891.35 feet to the center line of Stearns Road (as widened by instrument of dedication dated June 4, 1941 and recorded June 12, 1941 as document 424796); proceed thence North Easterly along said center line, being along a line that forms an angle of 93 degrees 36 minutes to the left with the prolongation of the last described course, for a distance of 54.35 feet to a point of curve in said center line; proceed thence South Easterly along said center line, being along a curve to the right that is tangent to the last described course, for a distance of 626.8 feet; proceed thence Northerly for a distance of 1881.6 feet to a point in the East and West quarter section line that is 87.12 feet East of the center of said Section 4; proceed thence Westerly along said East and West quarter section line for a distance of 87.12 feet to the center of said Section 4 and the place of beginning, in DuPage County, Illinois.

| GRANTOR | GRANTEE | PET'S EX. NO. | DATE OF INSTRUMENT | REMARKS |
|---|---|---|---|---|
| Martha Baker | LaSalle National Bank as Trustee under Trust Agreement dated 12/28/62, known as Trust No. 30647 | A–38 | Feb. 14, 1963 | |
| LaSalle Trust No. 30647 | From time to time to various corporations that made mortgages to City Savings Association which have been foreclosed or are being foreclosed. | | | All except the strip in question |

VII. THE VERNER FARM (Area in green on Pet's Ex. No. A–73.0)

That part of the Southwest Quarter of Section 2, Township 40 North, Range 9 East of the Third Principal Meridian, in DuPage County, Illinois, described as follows: Beginning at the Southwest corner of said Section 2; thence Easterly along the South line of said Section 2 a distance of 2,611.9 feet; thence Northerly at an angle of 91°58′ (turned from West to North) a distance of 880.00 feet; thence Westerly along a line parallel to the South line of said Section 2 a distance of 2,614.81 feet to a point in the West line of said Section 2; thence Southerly along the West line of said Section 2 a distance of 880.00 feet to the place or point of beginning.

| GRANTOR | GRANTEE | PET'S EX. NO. | DATE OF INSTRUMENT |
|---|---|---|---|
| Harold Verner & Janet Verner | Fidelity Thrift Corp., an Ill. corporation ("Fidelity Thrift") [11] | A–49.0 | July 15, 1964 |
| Fidelity Thrift | Wright Mortgage | A–60 | July 6, 1966 |
| Wright Mortgage | Genevieve B. Jarecki | A–71.1 | Jan. 28, 1969 |
| Genevieve B. Jarecki | Henry McGurren as Trustee [12] (no date or number of the trust agreement) | A–71.0 | Jan. 28, 1969 |

VIII. LOTS 600–602 OF APPLE ORCHARD

Lots 600, 601, 602 in Apple Orchard Subdivision Unit Number 14, of part of the SE ¼ of the SE ¼ of Section 3, Township 40 North, Range

———◆———

11. Kramer was a director of Fidelity Thrift. (Tr. 223; Ex. A–49.1) He was elected by Mensik voting stock owned by Eastern Trust. (Tr. 223–224) McGurren was the registered agent of Fidelity Thrift. (Ex. A–49.1)

12. Robert Kramer is the beneficiary of this trust. (Tr. 305–306).

9, East of the Third Principal Meridian, according to the plat recorded August 13, 1962 as Document R62–27629 in DuPage County, Illinois.

| GRANTOR | GRANTEE | PET'S EX. NO. | DATE OF INSTRUMENT | REMARKS |
|---|---|---|---|---|
| Anthony L. Michel, Sarah Prescott Michel, Rosell H Chrisman, Virginia R. Chrisman | Paul D. Van Wagner & Eleanor S. Van Wagner ("Van Wagners") | A–1.0 | Dec. 16, 1953 | NW ¼ of § 10, SW ¼ of SE ¼ of 3, SE ¼ SW ½ of 3, part of the SW ¼ of SW ¼ of 3. (Area in blue on Pet's. Ex. No. A–73.0) |
| Van Wagners | Henry McGurren as Trustee under Trust Agreement dated 1/10/59 (McGurren Trust 1–10–59") | A–6.1 | Jan. 10, 1959 | Same |
| McGurren Trust, 1–10–59 | A–1 Construction Corporation an Ill. corporation [13] ("A–1") | A–14 | Feb. 14, 1959 | All of the above north of Stearns Road |
| A–1 | Golden Valley Homes, Inc. an Ill. corporation ("Golden Valley") | A–16.0 | June 3, 1959 | Same |
| Golden Valley | Big Apple Realty Company, Inc. an Ill. corporation [14] ("Big Apple") | A–47.0 | June 17, 1964 | Lots 600–601 |
| Big Apple | Busy Bee Construction Company, an Ill. corporation ("Busy Bee") | A–53.0 | Oct. 15, 1964 | Same |
| Busy Bee | Long Life Building Corp., an Ill. corporation ("Long Life") [15] | A–58.0 | June 23, 1965 | Same |

13. Kramer was a director of A–1. (Ex. A–12.3)

14. Pikiel was registered agent of Big Apple and President from 1961 to 1963. (Ex. A–46.2)

15. Kramer is a director of Long Life (Ex. A–58.1) Pikiel was registered agent and an incorporator. (Ex. A–58.1)

IX.  LOTS 569 and 570 OF APPLE ORCHARD

Lots 569 and 570 both in Apple Orchard Subdivision, Unit No. 13, a Subdivision in Section 3 and 10, Township 40 North, Range 9, East of the Third Principal Meridian in DuPage County, Illinois.

| GRANTOR | GRANTEE | PET'S EX. NO. | DATE OF INSTRUMENT | REMARKS |
|---|---|---|---|---|
| George N. Saum & Virginia C. Saum ("Saums") | McGurren Trust 1-10-59 | A–11.0 | May 8, 1959 | NE ¼ of § 10 and § 4 South of Stearns Rd. (Area in yellow on Pet's. Ex. No. A–73.0) |
| McGurren Trust 1-10-59 | A–1 | A–12.0 A–12.2 | May 6, 1959 | Same except the W 100' |
| A–1 | LaSalle National Bank as Trustee under Trust Agreement dated 10/19/62 known as Trust No. 30121 | A–35.0 | Oct. 19, 1962 | Lots 569 & 570 |
| LaSalle Trust No. 30121 | Apple Orchard Builders, Inc. an Ill. corporation ("Apple Orchard") | A–46.1 | Oct. 11, 1962 | Same |
| Apple Orchard | Big Apple | A–46.0 | June 17, 1964 | Same |
| Big Apple | Busy Bee | A–53.0 | Oct. 15, 1964 | Same |
| Busy Bee | Long Life [16] | A–58.0 | | |

X.  NORTH EAST CORNER OF APPLE ORCHARD

That part of the Northeast Quarter of Section 10, Township 40 North, Range 9 East of the Third Principal Meridian, described by beginning at the Northeast corner of said Northeast Quarter and running thence South on the East line of said Northeast Quarter, 716.03 feet to the Northeast corner of Apple Orchard Subdivision, Unit No. 4, a Subdivision in said Section 10; thence West on the North Line of said Unit 4, 184.97 feet to the Northwest corner thereof; thence South on the West line of said Unit 4, 45.0 feet to the Northeast corner of Apple Orchard Subdivision, Unit No. 9, a Subdivision in said Northeast Quarter; thence West on the North line of said Unit 9, 250.05 feet; thence South 64° 55' 45" West on the Northerly line of said Unit No. 9, 81.49 feet to an angle point in the Southeasterly line of Lot 596 in Apple Orchard Subdivision Unit No. 13; thence North 22° 34' East on said Southeasterly line, 29.4 feet; thence north 47° 33' West on the line of said Unit 13, 215.0 feet; thence South 42° 27' West on the line of Unit 13, 10.31 feet; thence North 47° 33' West on the line of Unit 13, 145.0 feet; thence South 42° 27' West on the line of Unit 13, 70.0 feet; thence North 58° 35' West on the line of said Unit 13, 271.65 feet; thence North 87° 24' West on the line of said Unit 13, 30.7 feet; thence North 2° 49' East on the line of said Unit 13, 277.25 feet to the North line of said Section 10; thence North 88° 30' East on said North line, 843.22 feet, to the place of beginning, in the Township of Wayne, in DuPage County, Illinois.

---

16.  See Footnote 15, supra.

| GRANTOR | GRANTEE | PET'S EX. NO. | DATE OF INSTRUMENT | REMARKS |
|---|---|---|---|---|
| Saums | McGurren Trust 1–10–59 | A–11.0 | May 8, 1959 | Same as IX above |
| McGurren Trust 1–10–59 | A–1 | A–12.0 A.12.2 | May 6, 1959 | Same |
| A–1 | LaSalle Trust No. 30121 | A–37.0 A–37.1 | Oct. 19, 1962 | North East corner |
| LaSalle Trust No. 30121 | Robert's Realty Co., an Ill. corporation ("Robert's Realty") [17] | A–45.0 A–45.1 | May 10, 1964 | Same |
| Robert's Realty | Wright Mortgage [18] | A–61.0 | June 22, 1966 | Same |

XI. LOTS 247–254 AND 272–290 IN APPLE ORCHARD

Lots 247, 248, 249, 250, 251, 252, 253, 254, 272, 273, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 285, 286, 287, 288, 289, and 290, all in Apple Orchard Subdivision, Unit No. 3, a Subdivision in Sections 3 and 10, Township 40 North Range 9, East of the Third Principal Meridian, in DuPage County, Illinois.

| GRANTOR | GRANTEE | PET'S EX. NO. | DATE OF INSTRUMENT | REMARKS |
|---|---|---|---|---|
| Saums | McGurren Trust 1–10–59 | | May 8, 1959 | Same as IX above |
| McGurren Trust 1–10–59 | A–1 | | May 6, 1959 | Same |
| A–1 | Apple Orchard | A–29.0 A–30.0 | June 30, 1962 | Lots in question |
| Apple Orchard | A–1 | A–36.1 | Oct. 15, 1962 | Same |
| A–1 | LaSalle Trust No. 30121 | A–36.0 | Oct. 19, 1962 | Same |
| LaSalle Trust No. 30121 | Security Thrift Corporation, an Ill. corporation ("Security Thrift") [19] | A–41.0 | Feb. 13, 1964 | Same |

XII. "NORTH APPLE TREE RANCH" IN APPLE ORCHARD

The East 390.3 feet of the South East Quarter and the South West Quarter and the West 100 feet of the South West Quarter of the South West Quarter of Section 3, all of which lies South of Stearns Road, and the East 390.3 feet of the North West Quarter and the East 100 feet of

———◆———

17. Kramer is President of Robert's Realty. (Ex. A–45.2) He was elected by Mensik. (Tr. 225–226)

18. See Footnote 7, supra.

19. Kramer is President of Security Thrift. (Ex. A–56.1) He was elected by Mensik voting stock owned by Eastern Trust Co. (Tr. 226–227)

the North East Quarter of Section 10, all of which lies North of the South 2168.18 feet of the said Section 10, all in Township 40 North, Range 9 East of the Third Principal Meridian in DuPage County, Illinois.

| GRANTOR | GRANTEE | PET'S EX. NO. | DATE OF INSTRUMENT | REMARKS |
|---|---|---|---|---|
| Anthony L. Michel, Sarah Prescott Michel, Roswell H. Chrisman & Virginia R. Chrisman | Van Wagners | | Dec. 16, 1953 | Same as VIII above |
| Van Wagners | McGurren Trust 1–10–59 | | Jan. 10, 1959 | Same |
| Saums | McGurren Trust 1–10–59 | | May 8, 1959 | Same as IX above |
| McGurren Trust 1–10–59 | Mildred G. Riehl | A–26.1 | Jan. 4, 1962 | Premises in question |
| Mildred G. Riehl | LaSalle National Bank as Trustee under Trust Agreement dated 1/4/62 known as Trust No. 29042 [20] | A–26.0 | Jan. 4, 1962 | Same |

XIII.  MENSIK HOMESITE IN APPLE ORCHARD

The North 850 feet of the South 2168.18 feet of both the East 390.3 feet of the North West Quarter and the West 100 feet of the North East Quarter of Section 10, Township 40 North, Range 9 East of the Third Principal Meridian in DuPage County, Illinois, also known as the South 850 feet of the North 1210 feet of the said portions of the said sections.

| GRANTOR | GRANTEE | PET'S EX. NO. | DATE OF INSTRUMENT | REMARKS |
|---|---|---|---|---|
| Anthony L. Michel, Sarah Prescott Michel, Roswell H. Chrisman & Virginia R. Chrisman | Van Wagners | | Dec. 16, 1953 | Same as VIII above |
| Van Wagners | McGurren Trust 1–10–59 | | Jan. 10, 1959 | Same |
| Saums | McGurren Trust 1–10–59 | | May 8, 1959 | Same as IX above |
| McGurren Trust | Joy Lutgert and Scott Lutgert [21] | A–64.1 | Jan. 24, 1968 | All except the East 100 feet |

20. McGurren is the beneficiary of this trust.  (Ex. A–26.9)

21. See Footnote 5, supra.

| GRANTOR | GRANTEE | PET'S EX. NO. | DATE OF INSTRUMENT | REMARKS |
|---|---|---|---|---|
| Joy Lutgert & Scott Lutgert | Henry McGurren as Trustee under Trust Agreement dated 1/25/68 known as Trust No. 1 | A–64.0 | Jan. 26, 1968 | Same |
| Robert Kramer as Trustee under McGurren Trust 1–10–59 | Wright Mortgage [22] | A–65.0 | Feb. 29, 1968 | Same |
| Henry McGurren Trust No. 1 | Peerless Closure Co., an Ill. corporation ("Peerless") [23] | A–68.0 | Jan. 28, 1969 | Same |
| Wright Mortgage | Peerless | A–69.0 | Jan. 28, 1969 | Same |

XIV.  LOTS 14–17 APPLE TREE RANCH IN APPLE ORCHARD

Lots 14, 15, 16 and 17, all in Apple Tree Ranch Subdivision in the North ½ of Section 10, Township 40 North, Range 9, East of the Third Principal Meridian, in DuPage County, Illinois.

| GRANTOR | GRANTEE | PET'S. EX. NO. | DATE OF INSTRUMENT | REMARKS |
|---|---|---|---|---|
| Anthony L. Michel, Sarah Prescott Michel, Roswell H. Chrisman & Virginia R. Chrisman | Van Wagners | | Dec. 16, 1953 | Same as VIII above |
| Van Wagners | McGurren Trust 1–10–59 | | Jan. 10, 1959 | Same |
| Saums | McGurren Trust 1–10–59 | | May 8, 1959 | Same as IX above |
| McGurren Trust 1–10–59 | Mildred G. Riehl | A–21.1 | Oct. 6, 1961 | Lots 14–17 |
| Mildred G. Riehl | LaSalle National Bank as Trustee under Trust Agreement dated 8/4/61 known as Trust No. 28425 | A–21.0 | Oct. 7, 1961 | Same |
| LaSalle Trust No. 28425 | Peerless [24] | A–70.0 | Jan. 27, 1969 | Same |

22. See Footnote 7, supra.

23. McGurren is registered agent of Peerless Closure Co. (A–62.3) which is a holding company for Finlay's investments. (Tr. 526–527)

24. See footnote 23, supra.