Ernest KATIN et al., Plaintiffs,

v.

APOLLO SAVINGS et al., Defendants.

FEDERAL SAVINGS AND LOAN IN-
SURANCE CORPORATION, Receiver
of Apollo Savings, a corporation, Plain-
tiff,

v.

Edward P. KELLY et al., Defendants.

Nos. 68 C 808, 69 C 2232.

United States District Court,
N. D. Illinois, E. D.

Sept. 24, 1970.

Luis Kutner, Hubachek, Kelly, Rauch,
& Kirby, William T. Kirby and James T.
Griffin, for plaintiffs Ernest Katin and
others.

Pope, Ballard, Kennedy, Shepard &
Fowle, Merrill Shepard, William A. Car-
ey, Donald P. Moore, John S. Schauer
and Kael B. Kennedy, Chicago, Ill., for

**1056**

plaintiff Federal Savings and Loan Ins. Corp.

Sydney G. Craig, David L. Gomberg and Robert J. Sharfman, Cusack & Cusack, Peter Fitzpatrick, Cotton, Watt, Jones, King & Bowlus, Richard F. Watt, John M. Bowlus, Robert H. Nichols and Sheli Rosenberg, Seymour J. Kurtz, Eugene T. Devitt, Jacob Martin, Sydney G. Craig and John Hentzel, Richard L. Berdelle, John Powers Crowley, William G. Meyers, Isham, Lincoln & Beale, Michael I. Miller, Dent, Hampton & Doten, Chicago, Ill., Amelia S. Ferrier, Harlingen, Tex., Sander Caravello, Arlington Heights, Ill., Covey, McKenney & Powers, Harold C. McKenney, Crystal Lake, Ill., for various defendants.

## MEMORANDUM AND ORDER

CAMPBELL, District Judge.

This action arises out of the liquidation of an Illinois Savings and Loan Association, Apollo Savings ("Apollo"). Plaintiff, Federal Savings and Loan Insurance Corporation ("FSLIC") is acting as Receiver of Apollo in a liquidation proceeding presently pending before the Circuit Court of Cook County. That receivership proceeding commenced on April 26, 1968 when the Commissioner of Savings and Loan Associations for the State of Illinois appointed a receiver to take custody of and to liquidate Apollo pursuant to the Illinois Savings and Loan Act. (Ill.Rev.Stat. C. 32, par. 921). On May 2, 1968, the Attorney General of the State of Illinois, pursuant to the provisions of the Illinois Savings and Loan Act, filed a statutory complaint in the Circuit Court of Cook County, Chancery Division, seeking the liquidation and dissolution of Apollo. The cause was assigned to the Honorable Donald J. O'Brien, Presiding Judge of the Chancery Division of that court, and at the request of the Illinois Attorney General, Judge O'Brien entered a Decree ordering the liquidation of Apollo and directing its receiver to take custody and control of its assets and records for the purpose of liquidating the Association. At the request of the Attorney General, the Decree further, "restrained all persons from obtaining or attempting to obtain any judgment, attachment, encumbrance, or other like lien against or upon said association or any of its assets * * * while the same are in possession and control of said receiver or until further order" of the court.

The Decree also provided that the state court retained jurisdiction of the cause, "for the purpose of granting such other and further relief as said association, its members, said receiver, creditors, debtors, the public or others who apply to this court may require and in the judgment of this court merit."

On September 30, 1968, the then acting receiver resigned and plaintiff FSLIC was appointed receiver. It is still acting in that capacity.

## LITIGATION IN THIS COURT

(A) Katin v. Apollo.

On May 3, 1968, certain depositors-shareholders of Apollo brought an action in this court against Apollo and its Directors alleging various acts of mismanagement and violations of state law relative to the management of Savings and Loan Associations. Katin, et al. v. Apollo, et al., 68 C 808. Plaintiffs in *Katin* contend that these actions constituted a violation of the Securities Act of 1933 and the Securities Exchange Act of 1934. Basically, the relief sought is an award to each depositor-shareholder of "interest" or "dividends" for a period commencing when the last "interest" or "dividend" was paid and continuing up to the time each depositor was paid his principal by the FSLIC.[1]

In moving to dismiss the *Katin* case, FSLIC, as receiver of Apollo, stated that "stripped to its essentials", the *Katin* case is a "classic case of corporaet mismanagement which can only be asserted

---

1. The *Katin* plaintiffs also seek recovery for the uninsured portions of accounts exceeding $15,000 at the time Apollo was closed.

by Apollo Savings, through its receiver."

FSLIC also argued that these claims alleging corporate mismanagement, arise under state law and are "cognizable under state law, but not under the (Securities) Act," citing Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540, 546 (2nd Cir., 1967).

The initial filing of the *Katin* complaint was followed by numerous motions by the many defendants; by the filing of an amended complaint by plaintiffs; and finally, by the filing of this case, FSLIC v. Kelly et al.

(B) FSLIC v. Kelly.

This case, a civil conspiracy, fraud and corporate mismanagement case, was brought by FSLIC against certain officers and directors of Apollo and certain other persons having major transactions with Apollo. It contains many of the allegations of corporate mismanagement contained in the *Katin* case. It is allegedly brought by FSLIC in its capacity as the state court receiver of Apollo and as an insurer subrogee. The only basis for federal court jurisdiction is the fact that FSLIC is a federal agency authorized to bring suit in federal court. See Acron Investments, Inc. v. Federal Savings and Loan Insurance Corporation, 363 F.2d 236 (9th Cir. 1966).

The original complaint was filed October 29, 1969, and the amended complaint January 5, 1970. One defendant later filed a cross-claim. By April 22, 1970, most of the defendants had responded by answer or motion. At that time I ordered that the two cases (Katin v. Apollo and FSLIC v. Kelly) be consolidated for pretrial discovery and trial. I also advised counsel that I was considering the feasibility of proceeding with this cause under the enlightened and accelerated procedures established for protracted cases by the Judicial Conference in its Manual for Complex and Multidistrict Litigation.

In my review of the many pleadings filed by the various parties, I thought it clear that this Association, though properly in custody of the state, was not in the sorry financial condition of others we have dealt with. On the contrary, my first reaction to the issues in this case was that it appeared that here the dispute related to the proper disposition of potential surplus. Specifically, the plaintiffs in *Katin* argued that they were entitled to a first claim to the "remains" of the estate of the Association as their "loss of bargain", whether it be legally defined as dividends or interest, for the last six months of the Association's operation; certain officers and directors, generally referred to as the "Kelly interests" argued that any surplus should go to the owners of permanent reserve stock, 80 percent of which were owned by the Kelly interests; and FSLIC argued that any surplus must first go to pay "post-default interest" to the FSLIC, that is, interest on the money which FSLIC had paid to the insured depositors.

The various aspects of this case were explored in detail in pretrial conference held with all counsel in both cases. When I expressed my views as to the proper method of proceeding in this case Mr. Merrill Shepard, counsel for FSLIC, —in urging the dismissal of the *Katin* case—stated that, in his opinion the *Katin* claim belonged in the state court because, "the determination as to who would be entitled to any surplus, as among all classes of claimants would necessarily rest with the court in which the receivership (was pending) * * * the State of Illinois." Mr. Shepard also stated:

"Judge O'Brien, who has that case, that receivership, made it quite clear during a hearing at which Mr. Kirby and I participated that that was so.

Whatever happened in relation to the proceedings here, the fund from which a judgment would be made, except for possible assets of the individual defendants, would be the fund in his charge. And I believe Mr. Kirby and I both agreed with Judge O'Brien when he made that observation."

Counsel for the "Kelly interests" agreed that *Katin* should be dismissed in deference to state court proceedings and further urged that all claims including that of the receiver FSLIC should be referred to the state court.

More interesting to me at that time, however, was that all counsel suggested the possibility of settlement—a possibility I wanted to fully explore before burdening this estate with the substantial expense involved in litigation as complex as this. It appeared to me that settlement would certainly serve the best interests of all depositors and the federal insurer, FSLIC. Accordingly, we agreed that separate pretrial conferences would be held with the various parties and the court would work closely with counsel for FSLIC in an attempt to settle each of the many claims presented.

At the outset of the settlement negotiations, I expressed my concern to counsel for FSLIC that any steps we take toward settlement must be consistent with the proceedings in the state court, as it is that court that has the ultimate responsibility to supervise the administration of this receivership and approve any settlement we might reach in this court. I was assured by counsel for FSLIC (as the state court receiver) that this case was instituted with the full knowledge and approval of Judge O'Brien—and with that assurance settlement negotiations commenced.

After numerous pretrial conferences with the FSLIC and the Kelly interests, tentative agreement was reached on that aspect of the case. The parties agreed that FSLIC would pay the Kelly interests 50 cents per share ($270,000) for their permanent reserve stock and dismiss the case as to them. I viewed this settlement as fair to all concerned. The $270,000 would be used to pay substantial liens on the stock, so that it could be delivered free and clear to FSLIC, thus assuring it of the most substantial share of the surplus. The remainder would ultimately go to the government by way of fines I intended to impose in a criminal case pending against Edward P. Kelly.

At this time I felt it my duty to advise Judge O'Brien, the Chancellor in the state court proceeding, of our settlement negotiations as it was he who had overall responsibility for the receivership estate and who by virtue of that responsibility must approve the settlements we had labored so long to achieve. Upon advising Judge O'Brien of our developments, I was shocked to learn that contrary to the representations of counsel, Judge O'Brien was not advised of this proceeding before it was filed in this court and did not approve of it having been so filed. I was further advised by Judge O'Brien that while he had every respect for our court, he felt it his responsibility to fully review the terms of any settlement before approving it particularly since he did not authorize the bringing of this case—in the first instance. And, while he did indicate tentative approval of the Kelly settlement, he did not encourage further proceedings in this court.

Parenthetically, I think it important to stress that we of this court have every respect for the ability and integrity of Judge O'Brien who served at the bar of this court as one of our most active and able trial lawyers for many years, and that I fully agree and approve of the attitude of the learned Chancellor with respect to this case. Having borne the burden of overseeing many receiverships and liquidations over the years, I fully appreciate his reluctance to act as a "rubber stamp" in approving whatever settlement we might view as in the best interests of the estate he has the duty to administer. With my own experiences in mind, I accepted and concurred in Judge O'Brien's criticism.

Simultaneous with these developments were the developments in the attempted settlement of claims against certain other individual defendants and their enterprises, collectively referred to by counsel as Grizaffi and Falcone. Grizaffi and Falcone were contractors who obtained more than four million dollars in construction loans from Apollo. The receiver contends that these defendants, along with certain other persons, de-

frauded Apollo, causing losses of more than one million dollars. In our first settlement discussion the receiver demanded in settlement a sum of $750,000. Grizaffi and Falcone then advised the court that they believed they had a valid and substantial claim against Apollo and would soon file a counterclaim. These defendants further suggested that they would accept $700,000 in settlement of their counterclaim.

The proposed counterclaim of Grizaffi and Falcone indicated not only that settlement negotiations might be much less fruitful than originally anticipated or at least more complex and thereby subject to perhaps complete *de novo* review by the state court Chancellor if these negotiations resulted in settlement, but more importantly, the counterclaim if presented in this court, would be in direct contravention of the state court injunction, "restraining all persons from obtaining or attempting to obtain any judgment * * * or like lien against or upon said association * * *". (Similarly, the FSLIC, in its corporate capacity—as opposed to its capacity as receiver—indicates that it intends to file a claim against the Association for interest on the insurance payments it has made to depositors.)

█ For the many reasons explained here, I advised counsel for the FSLIC that it appeared to me that there was no alternative but to reconsider the motions of certain defendants to dismiss this cause or to dismiss on my own motion, without prejudice to the rights of FSLIC and all other parties to prosecute their claims in the state court where the receivership was pending as ancillary proceedings in that receivership qualifying for immediate relief. Subsequently, counsel for FSLIC filed a brief expressing their reasons in support of their position that this action should not be dismissed. I have reviewed the arguments advanced in this brief and for the reasons I have stated and others I shall further state, find them totally unconvincing.

First, it should be stressed that there is no question but that all of the relief sought here could be obtained in the state court proceedings. In fact, my experience in similar cases convinces me that the most expeditious manner of prosecuting claims of this nature,—i. e. all claims on behalf of or against the association in receivership—is to litigate these claims as ancillary to the receivership case and in the court where the receivership is pending. In Tcherepnin v. Franz, 316 F.Supp. 714 (N.D.Ill.1970), a case involving the liquidation of another savings and loan association of the State of Illinois (City Savings Association) I specifically instructed the receivers of the Association that all claims on behalf of the Association were to be litigated in this court as ancillary to the case in chief, and that, to the extent possible, claims against the Association were to be brought here. In accomplishing this important objective the judges of our state court, in a most gracious application of the principles of comity, have shown my receivers and our court every consideration. As recently as September 10, 1970, The Honorable Nicholas J. Bua of the Circuit Court of Cook County dismissed the case of Andover Advertising Company v. City Savings Association (67 L. 2949), when he was advised of my desire to litigate all claims against the Association in this court. Courtesies, based on comity, such as that extended by Judge Bua would not be so readily extended were it not for the fact that we judges of this court have over the years promoted the cooperative spirit based on mutual respect that presently exists between our courts, whether it be in the name of federalism, comity or simple common sense. Against this setting, I consider the legal arguments presented by FSLIC.

FSLIC first argues that this court has a duty to adjudicate any cause brought within its jurisdiction and that "deference to a state court is an extraordinary and narrow exception to this duty * * justified only in exceptional circumstances". To meet these extraordinary cir-

cumstances, FSLIC argues that each of the following tests be met: (1) there must be uncertainty of state law; (2) state court adjudication must clearly serve an important countervailing interest, such as, a federal constitutional issue that may be mooted by state court determination of pertinent state law or exercise of federal jurisdiction would disrupt state administrative process or create needless friction by unnecessarily enjoining state officials from executing domestic policies. FSLIC further argues that "there is no way" a judgment or settlement in this case could disrupt or interfere with the state court receivership.

I disagree with its analysis of the law and its attempted application to the facts of this case. In my opinion the statutes relied on do not grant jurisdiction under the facts of this case. Furthermore, even were jurisdiction clear, settled principles of comity as well as sound judicial administration, dictate that this court refuse jurisdiction in this case.

For our dual court system to function properly, all needless friction between the state and federal courts must be religiously avoided. This principle is established by statute as well as by court decision. See Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). As explained above, the case in chief—the receivership —was first brought in the state court by the Attorney General of Illinois under his statutory authority. Upon the motion of the Attorney General, the state court judge to whom the case was assigned enjoined prosecution of all claims against the Association, and retained jurisdiction for the purpose of granting any other and further relief the receiver may require and in the judgment of that court merit. Now, I am confronted with complex litigation which involves claims against the Association contrary to the state court injunction, and also seeks relief by the receiver—although the state court specifically retained jurisdiction to grant said relief.

I am aware that the receivership in question is not a traditional court created equity receivership, but is an executive receivership, under which the receiver was appointed by the Commissioner of Savings and Loan Associations. (Ill. Rev.Stat. C. 32 ¶ 921). It is still the court which has, by statute and by its own decree, entered on motion of the state's Attorney General, the overall supervisory responsibility over the estate in receivership. It is clear in this case —contrary to the representations of counsel—that the court with that authority and responsibility does not approve of the maintenance of this action. And, while FSLIC is a federal agency authorized to litigate *its claims* in a federal court, it is here as a state appointed receiver in a state court receivership subject to the supervision of a state court Chancellor. In short, while FSLIC as a federal agency may have Congressional authority to prosecute its claims in federal court, I do not believe that this power extends to the facts of this case wherein FSLIC, having sought and obtained appointment as receiver in a state court receivership, can now bring all the many ancillary claims of the receivership in this court contrary to the express desires of the court wherein the receivership is pending. I particularly note that FSLIC has advised the court and counsel that it intends to file still another claim in this court for post-default interest. This proposed case is to be brought by FSLIC as a government agency and will be against FSLIC as state court receiver. Such a claim brought against the estate in receivership would clearly be in further contravention of the state court injunction. This type of controversy between our courts is not what Congress intended when it authorized FSLIC to bring suit in federal court (12 U.S.C. § 1730(k); 28 U.S.C. § 451) and to act as receiver in state court liquidations. (12 U.S.C. § 1729). I note particularly that FSLIC has stated, in this case as well as in support of its motion to dismiss the *Katin* case, that this "fraud" and "mismanagement" case is brought

in its capacity as receiver and on behalf of the association and its shareholders. Section 1730, subsection (k), above cited, specfically provides:

"That any action, suit or proceeding to which the Corporation is a party in its capacity as conservator, receiver, or other legal custodian of an insured State-chartered institution and which involves only the rights or obligations of investors, creditors, stockholders, and such institution under State law shall not be deemed to arise under the laws of the United States."

By its own description this is such an action, brought not in its capacity as a federal corporation, but in its capacity as receiver, prosecuting rights of the association under state law. There is thus no statutory basis for the federal jurisdiction it demands I exercise.

▮ I believe the conclusion I reach here is also consistent with settled principles of comity between federal and state courts. The receivership is proceeding before a state court which has plenary jurisdiction over the affairs of the receivership estate. This court has, at best, only partial jurisdiction. We may litigate only portions of claims— subject to the supervision of the state court. The state court first took jurisdiction over the receivership estate. Under the Illinois Savings and Loan Act it has the responsibility to supervise the dissolution of State Savings and Loan Associations. Under settled principles best expressed by the Supreme Court in Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841 (1935) federal courts are admonished not to interfere with these dissolutions, though we may have "abstract" jurisdiction over the subject matter of certain claims.

▮ The approach I take here is similar in theory to that taken by the Supreme Court in Toucey v. New York Life Insurance Company, 314 U.S. 118, 135, 62 S.Ct. 139, 144, 86 L.Ed. 100 (1941). There Mr. Justice Frankfurter wrote:

" * * * a line of cases beginning with Hagan v. Lucas, 10 Pet. 400, 9 L.Ed. 470, holds that the court, whether federal or state, which first takes possession of a *res* withdraws the property from the reach of the other. * * * 'The rank and authority of the (federal and state) courts are equal, but both courts cannot possess or control the same thing at the same time, and any attempt to do so would result in unseemly conflict'."

See also, Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285 (1939), wherein the court stated:

"We have said that the principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property. The doctrine is necessary to the harmonious cooperation of federal and state tribunals."

These principles, as expressed by the Supreme Court in Toucey and Princess Lida are sometimes said to apply to actions in rem only and not to actions in personam. Significantly, FSLIC relies on this same distinction in urging that this action not be dismissed. But this distinction does not preclude dismissal. As very recently expressed by Judge Pell, of our Court of Appeals, in Aetna State Bank v. Altheimer, 430 F.2d 750 (1970).

"The growth of the abstention doctrine is recognized in 1 Barron & Holtzoff-Wright, Federal Practice and Procedure § 64, 352 (1960). The doctrine is referred to by the authors as a sound development in the administration of the federal courts.

The granting or denial of a stay has been held to be within the discretion of the trial court in analogous situations. Ferguson v. Tabah, 288 F.2d 665, 672 (2d Cir. 1961). The cases differentiate *in rem* and *in personam* actions in applying the principles here involved. More clearly, of course, the result of abstention was reached in the *in rem* cases where a state court already had custody of a *res*. A federal court must decline jurisdiction, in accord with the settled rule that the court first taking jurisdiction of a *res* may proceed to final judgment. 1 Barron & Holtzoff-Wright, Federal Practice & Procedure § 64, 351 (1960). While it seems to be well established that a federal court is not required to abate the normal *in personam* action on a plea of a pending action in a state court, nevertheless it is within the discretionary power of the district court to stay its proceedings pending the completion of state proceedings. See Ballantine Books, Inc. v. Capital Distributing Co., 302 F.2d 17, 19 (2nd Cir. 1962). See also, Seaboard Finance Co. v. Davis, 276 F.Supp. 507, 511 (N.D.Ill.1967)." (pp. 755–756)

In other words, in an action *in rem*, abstention is often required, whereas in actions *in personam* there is more room for the exercise of judicial discretion. I find that sound discretion here calls for dismissal. As stated in American Fidelity & Casualty Company v. Service Oil Company, 164 F.2d 478, 480–481 (4th Cir. 1947):

"There could be no possible justification for dragging into the federal court the litigation of the issues pending in the state court. * * *

Even though the court has jurisdiction to grant the * * * relief, it should not exercise the jurisdiction 'to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted.'

Ordinarily, the court first acquiring jurisdiction of a controversy should be allowed to proceed with it without interference from other courts under suits subsequently instituted."

See also, Brillhart v. Excess Insurance Company, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); and Reiter v. Illinois Nat. Cas. Co., 213 F.2d 946 (7th Cir. 1954).

Despite these many considerations of comity, FSLIC, relying only on its predetermined opinion that this court has jurisdiction, imperiously demands that jurisdiction be exercised. As I have stated above, even were jurisdiction present, the controversy between this court and Judge O'Brien's court such as counsel would engender, is unthinkable, practicing as we do in this same community and often concurrently dealing with the same subject matter.

Finally, I believe sound judicial administration also dictates dismissal of this cause. After spending many hours in extensive conferences and many other hours in preparation for these conferences and having finally reached a partial settlement of certain claims, I was advised that the state court would have to consider *de novo* the merits of any settlement I approved. In complex cases such as this, pretrial settlement negotiations are often more difficult than complete trial of less complex cases. Here, if I were to retain jurisdiction, two courts would labor with many of the same issues in the same case. This possibility is absurd. I have in the past weighed similar considerations in declaring or accepting jurisdiction. For example, in Johns-Manville Sales Corp. v. Chicago Title and Trust, 261 F.Supp. 905 (D.C.1966), I entertained, on the theory of ancillary jurisdiction, the claim of a co-plaintiff growing out of the same facts as the case in chief, but which sought less than the jurisdictional amount. There I stated (p. 908):

"Basically law is common sense. Paraphrasing the late Chief Justice of the United States Supreme Court, Edward Douglass White, whenever a rule of law does not make common sense

it should not be followed. It is unthinkable under our present advanced state of judicial administration to require the same case be tried separately in two different courts. Duplicitous expenses and an unjustifiable imposition on an already overtaxed judicial system run contrary to recent advancements in legal rules of procedure —most notably our own model Federal Rules of Civil Procedure."

Later, in Fugard v. Thierry and Layden v. Zantop, 265 F.Supp. 743, 750 (D.C. 1967), I remanded certain cases to the state court where separate but related cases were pending.

"In reaching this decision I am fully aware that there is as yet no precedent for the application of the *Finn* [American Fire and Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702] doctrine to circumstances involving plaintiffs who have initiated separate though related lawsuits in the state court.

I am equally aware of the practical considerations which give support to my decision. If I denied the motion to remand and retained jurisdiction, two courts of competent jurisiction within the same city would entertain basically the same lawsuit, that is, involving substantially the same factual and legal issues, the same attorneys, and the same parties. Costly and duplicitous pretrial preparation would also be necessary. Considering the well known and much publicized backlog of cases and the shortage of manpower on the bench and in the litigation practice field, it would be asinine to facilitate such a possibility."

Significantly, in the *Aetna State Bank* case, *supra*, Judge Pell judicially accepted similar considerations as proper in determining whether a district court should abstain in deference to state courts. Displaying the practical wisdom that has already marked his career on our Seventh Circuit Court of Appeals, the learned judge observed:

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. Landis v. North American Co., 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). A stay pending the outcome of the litigation in another court between the same parties, involving the same or controlling issues is an acceptable means of avoiding unnecessary duplication of judicial machinery. ACF Industries, Inc. v. Guinn, 384 F.2d 15, 19 (5th Cir. 1967)." (430 F.2d p. 755).

For the many compelling reasons expressed herein, I can conclude only that this cause, FSLIC v. Kelly, should be dismissed without prejudice to plaintiff's right to bring the same claims in the state court where its receivership is pending. An order shall enter accordingly.

A further order shall also be entered today dismissing the case of Katin v. Apollo for the reasons urged by FSLIC, particularly, that the plaintiffs' claims should be presented in the court wherein the receivership is pending. As stated in a separate memorandum relating to the *Katin* case, this dismissal is likewise without prejudice.

### MEMORANDUM AND ORDER IN NO. 68 C 808.

Plaintiffs are owners or holders of withdrawable capital accounts of Apollo Savings ("Apollo"). These shareholder-depositors bring this action against Apollo and its directors and allege, *inter alia*, certain violations of the Securities Act of 1933 and the Securities Exchange Act of 1934, as well as other allegations of fraud and mismanagement. The primary relief sought is an award of dividends on their withdrawable capital accounts for the period November 1, 1967 (when the last dividend was paid)

until the date each depositor received the principal of his account from the insurer, Federal Savings and Loan Insurance Corporation. ("FSLIC"). Plaintiffs also seek an award to certain shareholders of the amounts of withdrawable capital accounts in excess of the insured amount, $15,000. One named plaintiff was the owner or holder of an account in excess of $15,000. All other named plaintiffs have recovered the full amount of their principal from the insurer.

Upon review of the issues here presented I am convinced by the arguments of the state court receiver, FSLIC, that the claims here presented for "dividends" or "interest" are not properly cognizable in this court, but may be presented in the state court where the receivership is pending and where FSLIC is acting as receiver under the supervision of the state court. See, Federal Savings & Loan Insurance Corporation v. Huttner, 401 F.2d 58 (7th Cir. 1968); Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540 (2nd Cir. 1967).

The claims for the uninsured portion of an account, (the amount in excess of $15,000) may present a claim cognizable in this court. Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). I agree with the arguments of FSLIC and the other defendants, however, that the present complaint does not adequately allege certain elements, most notably reliance, necessary to state a cause of action under the securities acts.

More importantly, it appears clear at this time that all claims for principal accounts in excess of the insured amount of $15,000 will be paid. These claims are apparently pending in the receivership action in the state court. In view of this fact it seems pointless to go through trial of difficult issues relating to fraud, reliance and the possible application of the statute of limitations, when payment will be forthcoming in a more painless manner in the state court receivership proceedings. If payment of these accounts is not received in a reasonable time, or if it appears said pay-

ments will not be made, plaintiffs have leave to reinstate this cause.

In all other respects this cause is dismissed without prejudice to the rights of all plaintiffs to present these same claims in the state court.